1  Peter Anderson, Esq. (Cal. Bar No. 88891)
       peteranderson@dwt.com
2  Lindsay M. Samuel, Esq. (Cal. Bar No. 320075)
       lindsaysamuel@dwt.com
3  Eric H. Lamm, Esq. (Cal. Bar No. 324153)
       ericlamm@dwt.com
4  DAVIS WRIGHT TREMAINE LLP
   865 South Figueroa Street, 24th Floor
5  Los Angeles, California  90017-2566
   Telephone: (213) 633-6800
6  Fax: (213) 633-6899

7  Attorneys for Defendants
   MARIAH CAREY, SONY MUSIC
8  ENTERTAINMENT, and UNIVERSAL
   MUSIC CORP.

9
   Kenneth D. Freundlich, Esq. (Cal. Bar No. 119806)
10      ken@freundlichlaw.com
   Jonah A. Grossbardt, Esq. (Cal. Bar No. 283584)
11      jonah@freundlichlaw.com
   FREUNDLICH LAW, APC
12 16133 Ventura Blvd., Ste. 645
   Encino, California 91436
13 P: 818.377.3790
   F: 310.275.5331

14
   Attorneys for Defendant
15 WALTER AFANASIEFF

16 [*Additional Counsel on Following Page*]

17            **UNITED STATES DISTRICT COURT**

18           **CENTRAL DISTRICT OF CALIFORNIA**

19                **WESTERN DIVISION**

| | |
|---|---|
| 20  ANDY STONE, *etc., et al.*, | ) Case No. 2:23-cv-09216-MRA-JDEx |
| 21              Plaintiffs, | ) |
|  | ) **DEFENDANTS' MEMORANDUM OF** |
| 22        vs. | ) **POINTS AND AUTHORITIES IN** |
|  | ) **SUPPORT OF MOTION FOR** |
| 23  MARIAH CAREY, *etc., et al.*, | ) **SUMMARY JUDGMENT AND** |
|  | ) **ALTERNATIVE MOTION FOR** |
| 24              Defendants. | ) **PARTIAL SUMMARY JUDGMENT AS** |
|  | ) **TO THE EXTRINSIC TEST** |
| 25  | ) |
|  | ) Date: October 31, 2024 |
| 26  | ) Time: 1:30 p.m. |
| 27  | Courtroom of the Honorable |
|  | Mónica Ramírez Almadani |
| 28  | United States District Judge |

1    Benjamin S. Akley (Cal. Bar No. 278506)
          bakley@pryorcashman.com
2    Shamar Toms-Anthony (Cal. Bar No. 323246)
          stoms-anthony@pryorcashman.com
3    PRYOR CASHMAN LLP
     1801 Century Park East, 24th Floor
4    Los Angeles, California 90067
     Tel: (310) 683-6900
5    Fax: (310) 943-3397

6    Ilene S. Farkas (admitted *pro hac vice)*
          ifarkas@pryorcashman.com
7    PRYOR CASHMAN LLP
     7 Times Square, 40th Floor
8    New York, New York 10036
     Telephone: (212) 421-4100
9
     Attorneys for Defendant
10   SONY MUSIC PUBLISHING (US) LLC

11   Bert H. Deixler (Cal. Bar. No. 70614)
          bdeixler@kbkfirm.com
12   Patrick J. Somers (Cal. Bar. No. 318766)
          psomers@kbkfirm.com
13   Emma Tehrani (Cal. Bar. No. 329603)
          etehrani@kbkfirm.com
14   KENDALL BRILL & KELLY LLP
     10100 Santa Monica Blvd., Suite 1725
15   Los Angeles, California 90067
     Telephone: 310.556.2700
16   Facsimile: 310.556.2705

17   Attorneys for Defendant
     KOBALT MUSIC PUBLISHING
18   AMERICA, INC.

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

1.   INTRODUCTION ...................................................................... 1

   (a)   Summary of Argument ..................................................... 1

   (b)   Summary of Uncontroverted Facts...................................... 2

      (1)   Plaintiffs' 1989 Song...................................................... 2

      (2)   Defendants' 1994 Song, *All I Want for Christmas Is You* .......... 2

      (3)   Plaintiffs' Infringement Claim ....................................... 3

      (4)   Defendants' Experts, Dr. Ferrara and Prof. Lewis, and Their Initial and Rebuttal Reports ........................................... 3

      (5)   Plaintiffs' Experts, Prof. Fink and Prof. Sakakeeny, Who Submitted Abbreviated Initial Reports and No Rebuttal Reports ........................................................................ 3

2.   PLAINTIFFS CANNOT SATISFY THE EXTRINSIC TEST FOR SUBSTANTIAL SIMILARITY IN PROTECTED EXPRESSION ................ 4

   (a)   The Extrinsic Test for Substantial Similarity in Protectable Expression .................................................................... 4

   (b)   Plaintiffs' Experts Failed to Apply the Extrinsic Test ........................... 6

   (c)   The Claimed Similarities Are Unprotectable ......................................... 7

      (1)   The Lyrics of Vance and Carey Have No Protectable Similarities ................................................................... 8

         (i)    Copyright Does Not Protect the Ideas in Lyrics............... 8

         (ii)   The Phrase "All I Want for Christmas Is You" Is Common in Christmas Songs Predating Vance................................. 8

         (iii)  The Songs Use Different Christmas Tropes, and Use the Shared Tropes Differently ................................................ 9

         (iv)   The Other Alleged Similarities in Lyrics Are Commonplace Words and Short Phrases........................ 10

(v) The Lyrics of Vance and Carey Are Not Similar Under the Extrinsic Test for Literary Works .................. 11

(2) The Music in the Hooks of Vance and Carey Share Only Fragmentary and Unprotectable Similarities ........................... 12

(i) The Hook Melodies Are Very Different .......................... 12

(ii) Plaintiffs' Experts Claim Similarity in Nonconsecutive Pitches That Have Different Rhythms ........................... 13

(iii) The Chords of the Hooks Are Different .......................... 16

(iv) The Melodic and Harmonic Similarities in the Hooks Are an Unprotectable "Framework" ....................... 16

(3) The Overall Melodies and Harmonies Are Significantly Different .............................................................. 17

(i) The Overall Melodic Contours Are Different ................. 17

(ii) The Overall Melodic Phrase Structures Are Different .... 18

(iii) The Overall Chord Progressions Are Different .............. 19

(4) The Songs Have Different Structures ......................................... 19

(5) The Songs Have Different Keys, Overall Rhythms, and Stylistic Elements ........................................................ 20

(d) The Claimed Similarities Are Not Protectable as a Selection and Arrangement ........................................................ 21

(1) The Extrinsic Test Applied to Selection and Arrangement Copyrights ................................................... 21

(2) Plaintiffs Do Not Have a Selection and Arrangement Claim .... 22

3. CONCLUSION ............................................................... 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acuff-Rose Music, Inc. v. Jostens, Inc.*,
  155 F.3d 140 (2d Cir. 1998)........................................................................9

*Batts v. Adams*,
  No. CV 10–8123–JFW(RZx), 2011 WL 13217923
  (C.D. Cal. Feb. 8, 2011)...........................................................................20

*Benay v. Warner Bros. Entmt., Inc.*,
  607 F.3d 620 (9th Cir. 2010) ..............................................................9, 11

*Bernal v. Paradigm Talent & Literary Agency*,
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) ....................................................5

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ................................................................5, 8

*Corbello v. Valli*,
  974 F.3d 965 (9th Cir. 2020) ........................................................5, 21, 22

*Cortes v. Universal Music Latino*,
  477 F. Supp. 3d 1290 (S.D. Fl. 2020)......................................................22

*Data East USA, Inc. v. Epyx, Inc.*,
  862 F.2d 204 (9th Cir. 1988) ...................................................................10

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)...............................................................................2, 21

*Granite Music Corp. v. United Artists Corp.*,
  532 F.2d 718 (9th Cir. 1976) ...................................................................15

*Gray v. Hudson*,
  28 F.4th 87 (9th Cir. 2022) ..................................5, 7, 12, 14, 15, 16, 18, 19, 20

*Intersong-USA v. CBS, Inc.*,
  757 F. Supp. 274 (S.D.N.Y. 1991) ..........................................................18

*Jean v. Bug Music, Inc.*,
  No. 00CIV4022(DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) ..........15

*Johannsongs-Publ'g Ltd. v. Lovland*,
    No. CV 18-10009-AB(SSx), 2020 WL 2315805
    (C.D. Cal. Apr. 3, 2020)...................................................................... 6, 7

*Johnson v. Gordon*,
    409 F.3d 12 (1st Cir. 2005) .............................................................. 15

*Knowles v. Spin Master, Inc.*,
    No. CV 18-5827-PA(JCx), 2019 WL 4565102 (C.D. Cal. Sept. 17,
    2019) ................................................................................................... 6

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ........................................................... 11

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) ........................................................... 7

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015) .............................................. 18

*Morrill v. Stefani*,
    338 F. Supp. 3d 1051 (C.D. Cal. 2018) .............................. 4, 5, 6, 23

*Narell v. Freeman*,
    872 F.2d 907 (9th Cir. 1989) ................................................ 4, 9, 11

*Newton v Diamond*,
    388 F.3d 1189 (9th Cir. 2004) ......................................................... 15

*Olson v. National Broad. Co., Inc.*,
    855 F.2d 1446 (9th Cir. 1988) ..................................................... 7, 10

*Prunte v. Universal Music Grp., Inc.*,
    699 F. Supp. 2d 15 (D.D.C. 2010) .................................................... 8

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ..................................................... 4, 21

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ............................................... 9, 21, 22

*Shame On You Prods., Inc. v. Banks*,
    893 F.3d 661 (9th Cir. 2018) ............................................................ 4

iv

*Silas v. Home Box Office, Inc.*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) ................................................ 11

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ..........................4, 5, 7, 8, 9, 15, 17, 18, 20, 21, 22

*Smith v. Weeknd*,
    No. CV 19-2507-PA(MRWx), 2020 WL 4932074
    (C.D. Cal. July 22, 2020) ............................................................ 5, 15

*VMG Salsoul, LLC v. Ciccone*,
    824 F.3d 871 (9th Cir. 2016) ............................................................ 5

*Yonay v. Paramount Pictures Corp.*,
    No. CV 22-3846-PA(GJSx), 2024 WL 2107721
    (C.D. Cal. Apr. 5, 2024)................................................................ 6

**Statutes**

17 U.S.C.
    § 102............................................................................... 8
    § 103............................................................................... 2

**Rules**

Federal Rule of Civil Procedure 56........................................................ 4

**Regulations**

37 C.F.R. § 202.1 ...................................................................... 9

**Other Authorities**

*Copyright Office Practices* § 802.5(A) (3d ed. 2017) ................................... 20

R.S. Rosen, Music & Copyright (2008) .................................................. 14

W.F. Patry, 3 Patry on Copyright § 9:54.10 (2024)..................................... 22

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

### (a)   Summary of Argument

Thirty years after Mariah Carey and Walter Afanasieff's 1994 *All I Want for Christmas Is You* was released and became a Christmas standard, Plaintiffs claim it infringes the copyright in their musical composition of the same title.  But the claimed similarities are an unprotectable jumble of elements: a title and hook phrase used by many earlier Christmas songs, other commonplace words, phrases, and Christmas tropes like "Santa Claus" and "mistletoe," and a few unprotectable pitches and chords randomly scattered throughout these completely different songs.  As a matter of law, these claimed similarities cannot survive this Circuit's extrinsic test for substantial similarity in protectable expression.

As an initial matter, Plaintiffs lack competent evidence that the songs share any protectable expression.  Plaintiffs' experts failed to research prior art to determine whether the claimed similarities are commonplace, and they fail to distinguish between protectable and unprotectable elements.  Instead, their reports list isolated, fragmentary similarities in Vance and Carey, while omitting differences and the context in which the claimed similarities occur.  Courts have repeatedly held such lists to be inherently subjective, unreliable, and irrelevant to the objective extrinsic test.

In any event, it is beyond dispute that the claimed similarities are unprotectable.  And because they are randomly scattered throughout these overall different songs, in different ways, Plaintiffs cannot satisfy the extrinsic test by relying on a selection and arrangement theory.  Indeed, Plaintiffs' experts do not even argue that the fragmented similarities occur in a particular, coherent pattern or design that is present in both works.

Defendants' Motion should be granted.

**(b)** <u>**Summary of Uncontroverted Facts**</u>

**(1)    Plaintiffs' 1989 Song**

Plaintiffs allegedly co-authored their *All I Want for Christmas Is You* ("Vance") in 1988.[1]  Vance was recorded by the group Vince Vance and the Valiants and released to the public in 1989.  SUF 1-2.  The lyrics of Vance are undisputed (SUF 13), and while the parties' experts have some differences in their transcriptions of Vance's music, Defendants accept the transcriptions of Plaintiffs' expert for purposes of this motion.  SUF 130.

**(2)    Defendants' 1994 Song, *All I Want for Christmas Is You***

*All I Want for Christmas Is You* ("Carey") was created by defendants Mariah Carey and Walter Afanasieff, recorded by Ms. Carey, produced by Mr. Afanasieff, and released in 1994.  SUF 3.  The lyrics of Carey are undisputed (SUF 14), and for purposes of this motion, Defendants accept Plaintiffs' musical transcriptions.  SUF 130.

---

[1]     This action's initial discovery phase revealed that the music in Vance is so pervasively similar to the music in Bobby Vinton's 1964 *My Heart Belongs to Only You* ("Vinton"), that it is virtually impossible that Plaintiffs did not copy Vinton.  For example, Vance has significantly similar melodies and almost all the same chords in *every consecutive measure* of Vinton's verses.  *See* Ferrara Decl. Ex. 1 at 29-36 ¶¶ 79-97.  Indeed, when asked whether the similarities that Dr. Ferrara identified are significant as a whole, *Plaintiffs' own expert* testified:

> [Y]es, yeah, I do think there is a lot of similarity there…. I mean if the Vinton estate wanted to sue Mr. Vance, yeah, I think there is something going on there.

Lamm Decl. Ex. 9 at 185:2-17.  Should this action proceed past the initial discovery stage (and it should not), Defendants will show that Vance's music is not original to Plaintiffs and accordingly is not protected by copyright.  <u>17 U.S.C. § 103(a)-(b)</u>; *<u>Feist Pubs., Inc. v. Rural Tel. Serv. Co.</u>*, <u>499 U.S. 340, 345 (1991)</u> ("a work must be … independently created" rather than "copied from other works" to be protectable).

2

### (3)    Plaintiffs' Infringement Claim

In their First Amended Complaint ("FAC") (Doc. 31), Plaintiffs allege a single claim for copyright infringement.  Plaintiffs seek more than $20,000,000 in damages on the grounds that Carey allegedly copies Vance's "structure of an extended comparison between a loved one and trappings of seasonal luxury," "several of Plaintiffs' lyrical phrases," and various musical elements.  <u>FAC at 7-8 ¶¶ 31-37</u>.  As shown below, these allegations are contradicted by Plaintiffs' own experts.

### (4)    Defendants' Experts, Dr. Ferrara and Prof. Lewis, and Their Initial and Rebuttal Reports

Pursuant to the Court's bifurcation Order (Doc. 53), the parties completed expert discovery as to the extrinsic test.  Defendants served affirmative and rebuttal expert reports by their musicologist expert, Dr. Lawrence Ferrara, and their literary expert, Prof. Nathaniel Lewis, which meticulously demonstrate that the claimed similarities in Vance and Carey are fragmentary, commonplace public domain elements, randomly scattered throughout the overall different songs.  *See, e.g.*, Ferrara Decl. Ex. 1 at Visual Exhibit C (thirty-eight prior artworks relevant to the claimed lyrical similarities); *id.* Ex. 3 at Visual Exhibits B-D (sixty-two prior artworks relevant to the claimed musical similarities).

### (5)    Plaintiffs' Experts, Prof. Fink and Prof. Sakakeeny, Who Submitted Abbreviated Initial Reports and No Rebuttal Reports

Plaintiffs, in contrast, served a three-page report by Prof. Robert Fink, a musicologist, and an eight-page report by Prof. Matt Sakakeeny, another musicologist.  Plaintiffs served no rebuttal reports to Defendants' experts' initial reports.  SUF 4.

At their depositions, Plaintiffs' experts admitted that their reports describe many of the songs' elements incorrectly.  SUF 7-8, 118-119; *see* below at 15 n.7.  And they confirmed their reliance on fragmentary, commonplace elements.

## 2.  **PLAINTIFFS CANNOT SATISFY THE EXTRINSIC TEST FOR SUBSTANTIAL SIMILARITY IN PROTECTED EXPRESSION**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In copyright cases, summary judgment is frequently granted and affirmed, even over dueling expert reports, when a plaintiff fails to satisfy the extrinsic test. *See* below at 5-6. Summary judgment is appropriate here.

### (a)  The Extrinsic Test for Substantial Similarity in Protectable Expression

To establish copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) that defendants copied protected aspects of their work. Skidmore v. Led Zeppelin, 952 F.3d 1051, 1064 (9th Cir. 2020). The second "prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" *Id.* (quoting Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by* Skidmore, 952 F.3d 1051).

If this case proceeds past the initial discovery phase—and it should not—Defendants will establish they did not copy Vance. However, this Motion addresses only unlawful appropriation because even in cases of admitted copying, a claim fails if the copying is not unlawful. Narell v. Freeman, 872 F.2d 907, 910-11 (9th Cir. 1989) (admitted copying of unprotected phrases; summary judgment affirmed).

To prove unlawful appropriation, a plaintiff must show that "the similarities between the two works [are] 'substantial' and … involve protected elements of the work." Rentmeester, 883 F.3d at 1117. Two tests are applied: an "extrinsic test" or objective test, and an "intrinsic test" or subjective test. Shame On You Prods., Inc. v. Banks, 893 F.3d 661, 667 (9th Cir. 2018) (affirming summary judgment based on extrinsic test). While plaintiffs must satisfy both tests, at "summary judgment, courts apply only the extrinsic test[.]" Morrill v. Stefani, 338 F. Supp. 3d 1051, 1058 (C.D. Cal. 2018) (quoting Funky Films, Inc. v. Time Warner Entmt. Co., L.P., 462 F.3d

4

1  1072, 1077 (9th Cir. 2006), *overruled on other grounds by* Skidmore, 952 F.3d
2  1051)).

3  The extrinsic test requires courts "to ensure that whatever objective similarities
4  the evidence establishes between two works are legally sufficient to serve as the basis
5  of a copyright infringement claim[.]" Gray v. Hudson, 28 F.4th 87, 97 (9th Cir. 2022).
6  Courts apply a "three-step analysis: (1) the plaintiff identifies similarities between the
7  copyrighted work and the accused work; (2) of those similarities, the court disregards
8  any that are based on unprotectable material …; and," if any similarities remain,
9  "(3) the court must determine the scope of protection ('thick' or 'thin') to which the
10  remainder is entitled 'as a whole.'" Corbello v. Valli, 974 F.3d 965, 974 (9th Cir.
11  2020). The burden is on the plaintiff to identify the similarities for this analysis. *Id.*;
12  Bernal v. Paradigm Talent & Literary Agency, 788 F. Supp. 2d 1043, 1060 (C.D. Cal.
13  2010) (citation omitted).

14  "Crucially, because only substantial similarity in protectable expression may
15  constitute actionable copying … 'it is essential to distinguish between the protected
16  and unprotected material in a plaintiff's work.'" Skidmore, 952 F.3d at 1064. "A
17  court must take care to inquire only whether the *protectible elements, standing alone,*
18  are substantially similar" and "filter out and disregard the non-protectible elements...."
19  Cavalier v. Random House, Inc., 297 F.3d 815, 822-23 (9th Cir. 2002) (quotation
20  marks omitted). The test often requires "analytical dissection of a work and expert
21  testimony." Morrill, 338 F. Supp. 3d at 1058.

22  "[T]he extrinsic test is objective and is often resolved as a matter of law" (Gray,
23  28 F.4th at 97), even in music cases with dueling musicologists. *See, e.g.*, VMG
24  Salsoul, LLC v. Ciccone, 824 F.3d 871, 878-79 (9th Cir. 2016) (summary judgment
25  affirmed where musicologist's claimed similarities between musical works—a
26  quarter-note horn hit and a full measure containing a half-note rest, eighth-note rest,
27  eighth-note horn hit, and quarter-note horn hit—were unprotectable); Smith v.
28  Weeknd, No. CV 19-2507-PA(MRWx), 2020 WL 4932074 at *6 (C.D. Cal. July 22,

2020) (granting summary judgment where plaintiff's musicologist failed to filter out prior art and relied on unprotectable similarities such as minor mode, key, tempo, and three isolated notes), *aff'd sub nom.* <u>Clover v. Tesfaye</u>, No. 20-55861, 2021 WL 4705512 (9th Cir. Oct. 8, 2021); <u>Johannsongs-Publ'g Ltd. v. Lovland</u>, No. CV 18-10009-AB(SSx), 2020 WL 2315805 at *7 (C.D. Cal. Apr. 3, 2020) (granting summary judgment where plaintiff's musicologist failed to consider prior art, failed to filter out unprotected elements, and relied on different eight-note sequences in the parties' songs), *aff'd* <u>No. 20-55552, 2021 WL 5564626 (9th Cir. Nov. 29, 2021)</u>; <u>Morrill</u>, 338 F. Supp. 3d at 1059-62  (granting summary judgment where plaintiff's musicologist relied on unprotected words, rhyming, rhythms, and tritones); *see also* <u>Gray</u>, 28 F.4th at 95 (affirming judgment as a matter of law, which has "essentially 'the same'" standards as summary judgment).

**(b)**    **Plaintiffs' Experts Failed to Apply the Extrinsic Test**

As an initial matter, Plaintiffs cannot carry their burden of showing substantial similarity in protectable expression because their experts failed to apply the extrinsic test, leaving Defendants' experts, who did apply the extrinsic test, unrebutted.

Plaintiffs' experts admittedly failed to research and consider prior art before rendering the opinions in their reports.  SUF 5-6.  Plaintiffs' experts also failed to filter out claimed similarities that are commonplace or musical building blocks.  Because they do not "*eliminate* the non-protectible prior art components" and other unprotectable elements "from the songs in issue, and then compare the protectable remainder," their reports are "invalid under the extrinsic test and … legally irrelevant."  <u>Johannsongs</u>, 2020 WL 2315805 at *6 (affirming summary judgment where the plaintiff's expert musicologist failed to filter out prior art elements); <u>Yonay v. Paramount Pictures Corp.</u>, No. CV 22-3846-PA(GJSx), 2024 WL 2107721 at *3 (C.D. Cal. Apr. 5, 2024) (excluding expert report on same grounds); <u>Knowles v. Spin Master, Inc.</u>, No. CV 18-5827-PA(JCx), 2019 WL 4565102 at *4 (C.D. Cal. Sept. 17, 2019) (similar).

Plaintiffs' expert opinions are also subjective and unreliable because they rely on lists of isolated elements and fail to put those elements in the context of the entire compositions. "'[L]ists of similarities' are 'inherently subjective and unreliable,' especially where," as here, "they 'emphasize … random similarities scattered throughout the works.'" _Olson v. National Broad. Co., Inc._, 855 F.2d 1446, 1450 (9th Cir. 1988) (quoting _Litchfield v. Spielberg_, 736 F.2d 1352, 1356 (9th Cir. 1984)); _Johannsongs_, 2020 WL 2315805 at *5 (similar).

To make matters worse, both Plaintiffs' experts make _changes_ to the elements and omit differences in them to create the illusion of similarity where none exists. For example, as explained below, a melody consists of a series of pitches that are "rhythmically organized." _Gray_, 28 F.4th at 99; _see_ below at 12-13. But Prof. Fink's report claims similarity in melody because of four pitches, ignoring their _admittedly different_ rhythmic organizations. SUF 137, 146-149. Pitches alone are not a melody. Plaintiffs' experts therefore do not assist the Court in identifying "objective similarities" as required by the extrinsic test. _Skidmore_, 952 F.3d at 1064.[2]

Because Plaintiffs' experts failed to apply the extrinsic test, Plaintiffs cannot carry their burden and their claim fails as a matter of law.

**(c)    The Claimed Similarities Are Unprotectable**

With respect to lyrics, the claimed similarities in Vance and Carey are the phrase "all I want for Christmas is you" and its underlying idea, both of which were common in Christmas songs before Vance, and a handful of Christmas tropes and other words scattered throughout overall different lyrics. The claimed musical similarities are four _nonconsecutive_ pitches, with different rhythms and in otherwise

---

[2]    Prof. Fink's opinions are also unreliable because he relies on the now-abrogated inverse ratio rule, under which a high degree of access lowered the burden of proof of substantial similarity. _See Skidmore_, 952 F.3d at 1059-60. His report states that a claimed similarity would be significant "given … a strong case for access," and he testified that the significance of the similarities in his report could vary depending on the evidence of access. SUF 10; _see Skidmore_, 952 F.3d at 1069 ("access … in no way can prove substantial similarity").

different hook melodies, the "functions" of the hooks' different chords, and various generic musical elements that Plaintiffs' experts admit are commonplace.  Prof. Sakakeeny also identifies fragmentary similarities outside of the hooks, but Prof. Fink testified that he did not consider that music to have significant similarities.  SUF 180, 193.

  None of the claimed similarities are protectable.

### (1)    The Lyrics of Vance and Carey Have No Protectable Similarities

#### (i)    Copyright Does Not Protect the Ideas in Lyrics

  Like legions of Christmas songs before them, Vance's and Carey's lyrics include the idea of wanting someone for Christmas rather than presents or other trappings of Christmas.  SUF 16 (at least 19 songs predating Vance expressing this lyrical idea).  But it is fundamental that copyright "only protects expression of ideas, not the ideas themselves."  <u>Cavalier</u>, 297 F.3d at 824 (book's "general premise of a child, invited by a moon-type character, who takes a journey through the night sky" was unprotectable); <u>17 U.S.C. § 102(b)</u> ("In no case does copyright protection … extend to any idea [or] concept … regardless of the form in which it is … embodied in [a] work"); <i>see, e.g.</i>, <u>Prunte v. Universal Music Grp., Inc.</u>, 699 F. Supp. 2d 15, 26 <u>(D.D.C. 2010)</u> (lyrical idea unprotectable), <i>aff'd</i> <u>425 Fed. App'x 1 (D.C. Cir. 2011)</u>. Prof. Sakakeeny also argues that obviously different lyrics in Vance and Carey—such as Vance's "Santa can't bring me what I need" and Carey's "Santa Claus won't make me happy"—express a similar idea, but the idea is commonplace and unprotectable. SUF 17-18.  The extrinsic test requires that these and any other unprotectable ideas be "filter[ed] out."  <u>Cavalier</u>, 297 F.3d at 822.

#### (ii)    The Phrase "All I Want for Christmas Is You" Is Common in Christmas Songs Predating Vance

  Both Vance and Carey use the phrase "all I want for Christmas is you" as their titles, but earlier songs used the same title and, in any event, titles are not protectable.

1  SUF 19; _Benay v. Warner Bros. Entmt., Inc._, 607 F.3d 620, 628 (9th Cir. 2010),

2  _overruled on other grounds by_ _Skidmore_, 952 F.3d 1051.  Vance and Carey also use

3  that phrase as their hooks, but in different lyrical contexts and in different parts of the

4  songs.  SUF 20-25.[3]

5       The phrase is unprotectible for many reasons.  First, it is commonplace in

6  Christmas songs, including as a hook and title; at least thirteen songs predating Vance

7  use that phrase or a very similar one.  SUF 19.  Copyright does not protect

8  "expressions that are standard, stock, or common to a particular subject matter or

9  medium."  _Skidmore_, 952 F.3d at 1069 (quoting _Satava v. Lowry_, 323 F.3d 805, 810

10  (9th Cir. 2003)).  Also, short phrases are unprotectable.  _Narell_, 872 F.2d at 911 (short

11  phrases like "river wound its way between muddy banks crawling with alligators" are

12  unprotectable); _Acuff-Rose Music, Inc. v. Jostens, Inc._, 155 F.3d 140, 143 (2d Cir.

13  1998); 37 C.F.R. § 202.1(a).  In addition, the phrase is unprotectable because it "flows

14  … naturally" from the idea of wanting only "you" for Christmas.  _Benay_, 607 F.3d at

15  624-25.  The phrase "all I want for Christmas is you" must therefore be filtered out

16  under the extrinsic test.

17                    **(iii)    The Songs Use Different Christmas Tropes, and Use**

18                            **the Shared Tropes Differently**

19       Being Christmas songs, Vance and Carey use Christmas tropes.  But they use

20  mostly different tropes.  SUF 85 ("holly," "silver bells," "sleigh rides," "Blue

21  Christmas," "tinsel," "bows," and "angels" in Vance but not Carey); 86 ("presents,"

22

23  ───────────────

[3]        For example:

24  Vance's Verse 2                              Carey's Chorus

25  I don't need sleigh rides in the snow,       I just want you for my own,
    Don't want a Christmas that's blue.          More than you could ever know.

26  Take back the tinsel, stockings and bows,    Make my wish come true:
    'Cause all I want for Christmas is you.      All I want for Christmas is you.

27                                               (You, baby. Oh…)

28  SUF 13-14.

                                    9

"wishes," "fireplace," "toy," "list," "North Pole," "Saint Nick," "reindeer," "lights," "laughter," "singing," and "sleigh bells" in Carey but not Vance).

The Christmas tropes that do appear in both songs—"mistletoe," "snow," "Santa Claus," "stocking(s)," and "underneath the Christmas tree"—are used in completely different lyrics and in different parts of the songs. For example, in Vance, "mistletoe" appears in the opening lyric and is one of the Christmas trappings that the narrator says to "take back." But in Carey, "mistletoe" appears in the twenty-fourth line, where the narrator says, "I'm just gonna keep on waiting [for a kiss] underneath the mistletoe." SUF 26-31. The other tropes are likewise used differently. SUF 32-37 (Santa), 38-43 (Snow), 44-49 (stocking/stockings), 50-53 (underneath the Christmas tree).

Plaintiffs' experts strain to find additional shared tropes, noting that (1) Vance has "sleigh rides" and "silver bells," while Carey has "sleigh bells," (2) Vance has "dream come true," while Carey has "wish come true," (3) Vance has "if I wrote a letter to Santa Claus," while Carey has "I won't make a list and send it to the North Pole for Saint Nick," and (4) Vance has "expensive things," while Carey has "presents." Not only are these words and phrases different, with different meanings, but Vance and Carey use them in different contexts. And it is undisputed that these words and phrases are familiar Christmas tropes. SUF 54-66 (sleigh/bells), 67-73 (dream/wish), 74-79 (letter/list), 80-84 (expensive things/presents); *see* _Data East USA, Inc. v. Epyx, Inc._, 862 F.2d 204, 209 (9th Cir. 1988) (unprotectable similarities in karate video games included punches and kicks that were "standard treatment of the *idea* of … karate").

These words and phrases must therefore be filtered out under the extrinsic test.

### (iv)  The Other Alleged Similarities in Lyrics Are Commonplace Words and Short Phrases

The remaining alleged lyrical similarities are the words "ask for," "don't need" or "want," and "just one thing." These are, again, "random similarities scattered"

throughout different parts of Vance and Carey and in different contexts. _Olson_, 855 F.2d at 1450; SUF 87-89 (ask for) 90-95 (need/want), 96-101 (just one thing). For example, the narrators of Vance and Carey never state "I don't want" or "I don't need" the same thing. SUF 90. They are unprotectable commonplace words and phrases. _Narell_, 872 F.2d at 911. They also are unprotected because they flow naturally from the idea of not wanting or needing other things and instead wanting only "you" for Christmas. _Benay_, 607 F.3d at 624-25. Thus, these words, like Plaintiffs' other claimed lyrical similarities, must be filtered out under the extrinsic test.

### (v)     The Lyrics of Vance and Carey Are Not Similar Under the Extrinsic Test for Literary Works

Alternatively, because lyrics as a whole can be copyrightable as literary works (_Leadsinger, Inc. v. BMG Music Pub._, 512 F.3d 522, 527 (9th Cir. 2008)), Defendants' literary expert, Prof. Lewis, separately analyzed the lyrics of Vance and Carey using the extrinsic test for literary works, which "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works." _Benay_, 607 F.3d at 624. He concluded there are no substantial similarities, and there are substantial differences.

Plaintiffs' experts are musicologists, not literary experts, and neither analyzed the lyrics using this framework. They also submitted no rebuttals to Prof. Lewis's report. SUF 4. Accordingly, if the Court were to consider the lyrics of Vance and Carey under the extrinsic test for literary works, Prof. Lewis's findings are unrebutted.

Plaintiffs' experts also floundered when they attempted to analyze the songs' lyrics. While Prof. Sakakeeny's report states Vance and Carey have the same "theme or storyline," he testified that "in retrospect," he would "us[e] 'idea' instead of 'theme' or 'storyline'"—the "idea" being the basic unprotectable idea of wanting someone more than Christmas trappings. SUF 118. Furthermore, Prof. Sakakeeny identifies no similarities in the works' "total sequence[s] of events and the relationships between the major characters." _Silas v. Home Box Office, Inc._, 201 F. Supp. 3d 1158, 1173

1  (C.D. Cal. 2016).  And Prof. Fink testified that Vance and Carey have no plots.  SUF
2  117.

3       Prof. Sakakeeny's report also claims that Vance and Carey feature "a woman
4  who wants her partner more than material goods or seasonal comforts."  SUF 111.
5  But that character "flow[s] naturally" from the songs' underlying unprotected idea.
6  _Benay_, 607 F.3d at 627.  There are also undisputed differences in the characters, and
7  the other elements of the extrinsic test as applied to literary works.  SUF 110-115.

8       As a result, Plaintiffs' claim that Carey copies Vance's lyrics fails even if the
9  Court applies the extrinsic test for literary works.

10      **(2)**    **The Music in the Hooks of Vance and Carey Share Only**
11          **Fragmentary and Unprotectable Similarities**

12       As for music, Plaintiffs' experts focus on the melody and chords that
13  accompany the lyrics "all I want for Christmas is you" in the hooks of Vance and
14  Carey.  But the hooks share, at most, only fragmentary and commonplace musical
15  building blocks.

16      **(i)**    **The Hook Melodies Are Very Different**

17       Melody is a single musical line consisting of a series of pitches and the rhythm
18  of those pitches.  SUF 126; _Gray_, 28 F.4th at 99 (melody is a "sequence of pitches …
19  'rhythmically organized' so as to form an 'esthetic whole'").  Pitch is the quality of a
20  sound perceived as being higher or lower, without regard to how long the sound lasts.
21  "Melodic rhythm" refers to the durations that the pitches are sung or played, and their
22  "metric placement," that is, their placement on or within beats in a bar or measure.
23  SUF 128-129.[4]

24       Even as Prof. Sakakeeny transcribes the hook melodies, they are clearly very
25  different:

26

27  [4]    A "note" is a sound of specified pitch _and_ rhythmic duration.  SUF 127.  Thus,
a melody can also be described as consisting of a series of notes.  _See, e.g._, Ferrara
28  Decl. Ex. 1 at 27 (referring to "the first four notes in CAREY").

SUF 130-131.  The number above each note is the pitch of that note in scale degrees.[5]  According to this transcription, Vance's hook has nine notes with the pitches 6-7-1-2-3-2-2-3-1, and one rest (the 𝄾 symbol), indicating silence between the syllables "-mas" and "is."  Carey's hook, as transcribed by Prof. Sakakeeny, has eleven notes on pitches 3-2-1-6-1-6-b6-2-3-2-1.  SUF 135-136.

There are many undisputed differences in the pitches: as discussed below, only four pitches are claimed to be similar, and the remaining seven pitches in Carey are different.  SUF 135-140.  The notes are also held for different lengths and are on different beats, which makes the melodic rhythms very different.  SUF 146-149.  The melodic contours are also different because the pitches move up and down in different ways and at different times.[6]  SUF 152-155.  Furthermore, these hook melodies are only fragments of overall different melodies.  SUF 134, 234.

**(ii)    Plaintiffs' Experts Claim Similarity in Nonconsecutive Pitches That Have Different Rhythms**

Plaintiffs' experts claim that the hooks are similar because they have notes with the pitch 1 on the lyric "want" and pitches 2, 3, and 1 on the lyrics "-mas is you."  SUF 137.  These are isolated pitches in the overall different hook melodies, and even these four pitches are sung to admittedly different rhythms.  Thus, the claimed melodic similarity does not even rise to an unprotectable sequence of four similar *notes*.

---

[5]    Pitches can be referred to by letters (*e.g.*, A, Bb (B-flat), *etc.*), or by their "scale degree," namely their position—I through 7—in the scale of a song's key.  SUF 128.

[6]    "Melodic contour" refers to the direction in which the pitches move in terms of up (*e.g.*, scale degree 2-3), down (3-2), or repeat (2-2).  SUF 151.

13

The following diagram shows the lyrics and the sequences of pitches in the hooks, per Prof. Sakakeeny's transcription above. Like Prof. Fink's report, it does not show the hooks' melodic rhythms. SUF 9. But even this partial analysis shows that the four claimed similar pitches (in red) are nonconsecutive because they are separated by different pitches (bolded and underlined), and the majority of pitches are different:

Pitches of Hooks (Rhythm Not Shown)

|  | All | I |  | want | for | Christ- | mas |  | is |  | you |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Vance: | **6** | **7** |  | 1 | **2** | **3** | 2 | **2** | 3 | 1 |  |
| Carey: | **3** | **2** | **1** | **6** | 1 | **6** | **b6** | 2 |  | 3 | **2** 1 |

SUF 130-131, 135-138, 146.

This pitch-only analysis ignores major differences in the melodic rhythms, which is the other essential element of melody. _Gray_, 28 F.4th at 99; R.S. Rosen, MUSIC & COPYRIGHT 153 n.9 (2008) (noting pitch sequences are "of no musical significance" and that _Rock of Ages_ and _Rudolph, the Red-Nosed Reindeer_ have the same pitch sequences, but sound nothing alike because their rhythms are different). In fact, it is undisputed that the claimed similar pitches are have different durations and are on different beats. SUF 146 (chart of duration and metric placement of each note). The next diagram shows the melodic rhythms, as transcribed by Prof. Sakakeeny, by aligning the pitches with the beats on which they occur:

Hooks of Vance and Carey (Pitch and Rhythm)

| Beat | 1 | 2 | 3 | 4 | 1 | 2 | 3 | 4 | 1 | _etc._ |
|---|---|---|---|---|---|---|---|---|---|---|
| Vance | 6  7 | 1    2 | 3    2 | | 2 3  1 | | | | | |
|  | All  I | want for | Christmas | | is  you | | | | | |
| Carey | 3 | 2  1  6 | 1 | 6 | b6 | 2 | — | 3 | 2 1 | |
|  | All | I | want | for | Christ | mas | | is | you | … |

_See_ SUF 146. As can be seen, the hooks of Vance and Carey have _zero_ notes with similar pitch _and rhythm_.

14

The claimed similarity in four non-consecutive pitches, with different rhythms, is unprotectable.[7]  Copyright does not protect consecutive sequences of pitches without regards to their rhythm.  _Gray_, 28 F.4th at 100 ("While an eight-note melody may be copyrightable, the abstract eight-note pitch sequence that is a component of the melody is not.").  Thus, even if Vance and Carey shared a _sequence_ of pitches with different rhythms—let alone the four randomly scattered pitches above—that would not be a protectable similarity.

This claimed similarity is also too fragmentary to be protectable.  Copyright does not protect sequences of three or four consecutive notes.  _Skidmore_, 952 F.3d at 1071 ("We have never extended copyright protection to just a few notes.  Instead we have held that 'a four-note sequence common in the music field' is not the copyrightable expression in a song.") (quoting _Granite Music Corp. v. United Artists Corp._, 532 F.2d 718, 721 (9th Cir. 1976)); _Newton v Diamond_, 388 F.3d 1189, 1196 (9th Cir. 2004) (copying of three-note sequence was de minimis); _Smith_, 2020 WL 4932074 at *6 ("three isolated notes or pitches cannot be protectable as a matter of law"); _see also Gray_, 28 F.4th at 94, 102 (3-3-3-3-2-2 sequence with flat rhythm is unprotectable).  And the claimed similarity here is only the pitches, not the rhythms, of four _nonconsecutive_ notes.  Courts have found far more similar melodies not to be substantially similar a matter of law.  _See, e.g._, _Johnson v. Gordon_, 409 F.3d 12, 21 (1st Cir. 2005) (melody with pitches 5-5-4-3-7-1 sung to the lyrics "you're the one for me" not substantially similar to melody with pitches 5-5-4-3-2-1 sung to the same lyrics); _Jean v. Bug Music, Inc._, No. 00CIV4022(DC), 2002 WL 287786 at *6 (S.D.N.Y. Feb. 27, 2002) (melody 1-b7-1-b7-5-b7 with lyrics "clap your hands" did not infringe melody 1-b7-1-b7-5-#4-5-b7-1 with same lyrics, notwithstanding first

---

[7]    Prof. Sakakeeny's report does not mention the scale degree 1 pitch over "want" and instead claims that "the last three notes" sung to "-mas is you" are "identical." Lamm Decl. Ex. 8 at 2.  But he admitted that is inaccurate because (a) "-mas is you" is sung to four notes on pitches 2-2-3-1 in Vance and four notes on pitches 2-3-2-1 in Carey, and (b) those notes have different rhythms.  SUF 130-131, 141-142, 146-148.

three notes with identical pitch and rhythm).

Thus, the melodies of the hooks share no protectable similarities.

### (iii)    The Chords of the Hooks Are Different

A chord is three or more pitches sounded simultaneously. Chords can be referred to by letters (generally the lowest pitch in the chord), or by Roman numerals, with an upper-case Roman numeral indicating a major chord and a lower-case Roman numeral meaning a minor chord. A sequence of chords is called a chord progression. SUF 156-157. "[C]hord progressions may not be individually protected because they are basic musical building blocks." *Gray*, 28 F.4th at 100 (quotation marks omitted).

The chord progressions in the hooks of Vance and Carey are different, and Plaintiffs' experts claim only that the different chords "function" in a similar way. SUF 159.[8] Specifically, the chords share a similar concept of moving from a ii chord (a "predominant" chord), to a V chord (a "dominant" chord), and then to a I chord (a "tonic" chord). That is among the most common sequences in music. SUF 161. Moreover, Vance and Carey *express* this sequence differently because they use different chords. SUF 162-166. The harmonic rhythm of the chord progressions— that is, the rate of change of chords—also is different. SUF 167. Thus, there are no protectable similarities in the hooks' chords.

### (iv)    The Melodic and Harmonic Similarities in the Hooks Are an Unprotectable "Framework"

The parties' experts also agree that the claimed pitch and chord similarities discussed above are a commonplace musical building block *even in combination*.

Prof. Fink's report describes this combination—a scale degree 1 pitch over a predominant chord, followed by scale degrees 2 and 3 pitches leading to a scale degree 1 pitch over dominant and tonic chords—as a "framework" and a "musical building block." SUF 168-171. Copyright does not extend to common musical elements or

---

[8]    Prof. Sakakeeny defines harmonic function as "the tendency of certain chords to progress to other chords." SUF 160.

"building blocks[, which] belong in the public domain and cannot be exclusively appropriated by any particular author." *Skidmore*, 952 F.3d at 1069; *see also* Lamm Decl. Ex. 9 (Fink Depo.) at 171:19-22 ("I don't think the framework can be copyrighted by definition."). And Dr. Ferrara has identified *thirty-one* prior art examples, including many Christmas songs, featuring a melody ending with scale degrees 2-3-1 *combined with* a predominant-dominant-tonic chord progression. SUF 168.

Thus, none of the claimed similarities in the hook can satisfy the extrinsic test even when combined.

**(3)    The Overall Melodies and Harmonies Are Significantly Different**

Outside of the hooks, Prof. Fink agrees with Dr. Ferrara that there are no significant similarities in Vance's and Carey's melody or chords. SUF 180, 193. Prof. Sakakeeny identifies a few isolated and generic elements in the melodies and harmonies of the first verses (which do not contain the hooks), but, as Defendants now show, they are also unprotectable.

**(i)    The Overall Melodic Contours Are Different**

Prof. Sakakeeny's report claims that the songs' melodies have an "overall … comparable" melodic contour. Lamm Decl. Ex. 8 at 4. But he identifies only a claimed similarity in the *first two measures* of Vance's eight-measure Verse 1 and Carey's sixteen-measure Verse 1, and he admits that the melodic contours in the rest of the verses are different. SUF 181, 184. Moreover, even the first two measures of the verses have different melodic contours because they move up and down at different times and in different ways, as shown by the arrows in the following:



SUF 182-183; *see also Gray*, 28 F.4th at 100 ("[I]t could be argued that the overall 'shape' of a melody … is nothing more than an abstraction outside the protection of copyright law.").

### (ii)    The Overall Melodic Phrase Structures Are Different

Prof. Sakakeeny also points out that Vance's and Carey's different verse melodies are each organized into eight-measure periods consisting of antecedent and consequent phrases.[9]  SUF 185-186.  However, these are unprotectable structural elements because they are extremely common, and basic, musical building blocks. SUF 187-190; *McDonald v. West*, 138 F. Supp. 3d 448, 457-58 (S.D.N.Y. 2015) (eight-bar phrases are commonplace); *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991) ("structure patterns" are common unprotectable elements); *see also Skidmore*, 952 F.3d at 1069 (common or trite musical elements are unprotectable).

There are also significant differences in phrase structure.  For example, in Vance, the eight-measure period concludes Verse 1, and Verse 2 repeats the same period but with different lyrics, except that in the final two measures, the melody changes to the hook.  But in Carey, after the first eight-measure period, there is a different eight-measure period, which is then followed by the chorus—an entirely

---

[9]    A "period" is a musical term that corresponds to the sentence (or period) in language.  "Antecedent" and "consequent" phrases refer to two musical phrases, the second of which is a concluding response to or resultion of the first.  SUF 187-188.

different section with a new melody and the hook.  SUF 191-192, 174.  In short, there are no protectable similarities in melodic phrase structure.

### (iii)    The Overall Chord Progressions Are Different

Outside of the hooks, Prof. Fink agrees with Dr. Ferrara that the chord progressions have no significant similarities.  SUF 193.  Prof. Sakakeeny claims merely that the verses share three similar chords.  SUF 194.  Chord progressions, however, are not copyrightable.  _Gray_, 28 F.4th at 100.  Moreover, the chords he identifies are in different positions in the chord progression, and the third chord is different (C minor 6 vs. C minor 6/Eb):

| Measure | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Vance | G | B- | C  D | G  E7 | A-  C-6 | G  G/F#  E- | A7 | D  D+ |
| Carey | G | | | | C | | C-6/Eb | |

SUF 194-198.  Furthermore, the claimed similarity in these chords (I-IV-iv6, in Roman numerals) can be found in many Christmas songs predating Vance.  Prof. Sakakeeny even notes that the iv6 chord is so common in Christmas songs that it is called "the Christmas chord."  SUF 199-200.

Prof. Sakakeeny also claims that Vance and Carey have other shared chords like E7, E minor, and A7, but he admits that they are scattered throughout different parts of Vance and Carey.  SUF 201.  Given that chord progressions are not copyrightable, Plaintiffs cannot claim copyright in isolated chords used differently in different chord progressions.

### (4)    The Songs Have Different Structures

The overall structures of Vance and Carey are different.  SUF 172-179.  For example, whereas Carey features a common structure of alternating verses and chorus structure, with the hook in the chorus, Vance has no choruses and the hook occurs at the end of some verses.  SUF 174-176, 228-229.  And while both songs have

introductions, verses, and bridge sections, the length and number of those sections differ.  SUF 173-178.  The mere use of basic structural elements like introductions, verses, and bridges is unprotectable.  *See, e.g.*, <u>Batts v. Adams</u>, No. CV 10–8123–JFW(RZx), 2011 WL 13217923 at *6 (C.D. Cal. Feb. 8, 2011) (generic elements include introductions, verses, and choruses).

### (5)    The Songs Have Different Keys, Overall Rhythms, and Stylistic Elements

Vance and Carey are in different keys.  SUF 202-204.  They are also in different musical styles.  Plaintiffs' experts describe Vance as a "country ballad" with elements of 1950s doo-wop, and Carey as an "upbeat dance arrangement" with elements of 1960s Motown or "girl group" recordings.  SUF 207-210.

The songs also have different overall rhythms, including because Carey is more than twice as fast as Vance.  SUF 205-206.  Plaintiffs' experts claim that Vance and Carey use a "shuffle" rhythm with triplets played by the piano.  But these unprotectable stylistic elements are hallmarks of the 1950s and 1960s music genres that Plaintiffs claim Vance and Carey incorporate.  SUF 211-213; <u>Gray</u>, 28 F.4th at 97 ("commonplace elements … firmly rooted in [a] genre's tradition" are unprotectable); <u>Batts</u>, 2011 WL 13217923 at *5.

Finally, Prof. Sakakeeny claims Vance and Carey each have "characteristic arpeggio[s].'"[10]  The arpeggios use different notes and rhythms, arpeggiate different chords, are played on different instruments, and are in different sections.  SUF 214-221.  Even if Carey used *the same* arpeggio as Vance, that would not be a protectable similarity because arpeggios are "common property musical material."  <u>Skidmore</u>, <u>952 F.3d at 1070</u> (quoting *Compendium* of *Copyright Office Practices* § 802.5(A) (3d ed. 2017)).  To claim it is significant that Vance and Carey use *different* arpeggios defies logic.

---

[10]    An arpeggio or "broken chord" is when the notes of a chord are played successively rather than simultaneously.  SUF 215.

1    The objective dissection and analysis of the elements of Vance and Carey

2    establishes that Plaintiffs cannot satisfy the extrinsic test.

3    **(d)    The Claimed Similarities Are Not Protectable as a Selection and**

4    **Arrangement**

5    **(1)    The Extrinsic Test Applied to Selection and Arrangement**

6    **Copyrights**

7    A selection and arrangement of uncopyrightable elements may be protectable

8    only if those elements are "numerous enough and their selection and arrangement

9    original enough that their combination constitutes an original work of authorship."

10    _Skidmore_, 952 F.3d at 1074 (quoting _Satava_, 323 F.3d at 811).  Even then, selection

11    and arrangement copyrights protect only the "the _particular_ way in which the artistic

12    elements form a coherent pattern, synthesis, or design." _Id._ (emphasis in original).  A

13    plaintiff "cannot … reconstitut[e] the copyrighted work as a combination of

14    unprotectable elements and then claim[] that those same elements also appear in the

15    defendant's work, in a different aesthetic context." _Id._

16    Further, under the extrinsic test, a protectable selection and arrangement is

17    "infringed only where the _**works share, in substantial amounts, the 'particular,' i.e.,**_

18    _**the 'same,' combination of unprotectible elements**_." _Id._ at 1075 (emphasis added);

19    _Feist_, 499 U.S. at 349 ("[A] subsequent compiler remains free to use the [unprotected

20    elements] contained in another's publication … so long as the competing work does

21    not feature _**the same**_ selection and arrangement.") (emphasis added); _Rentmeester_,

22    883 F.3d at 1120 (same); _see, e.g._, _Corbello_, 974 F.3d at 974 n.2.

23    Finally, our Court of Appeals, sitting _en banc_, has cautioned that care must be

24    taken when considering selection and arrangement claims "[b]ecause many works of

25    art can be recast as compilations of individually unprotected constituent parts....  [As

26    a result, deeming] substantially similar two vastly dissimilar musical compositions,

27    novels, and paintings for sharing some of the same notes, words, or colors [would be]

28    at variance with maintaining a vigorous public domain." _Skidmore_, 952 F.3d at 1075-

21

76; *see also Satava*, 323 F.3d at 813 ("we must be careful in copyright cases not to cheat the public domain"; selection and arrangement claim rejected).

Indeed, one copyright treatise describes selection and arrangement arguments as a "favorite artifice of meritless plaintiffs" and the "last refuge of scoundrels." W.F. Patry, 3 PATRY ON COPYRIGHT § 9:54.10 (2024).

### (2)    Plaintiffs Do Not Have a Selection and Arrangement Claim

Plaintiffs have no viable selection and arrangement claim because their experts have not even attempted to show, and cannot show, that Vance has a "particular" copyrightable coherent pattern, synthesis, or design that also appears in Carey. *Skidmore*, 952 F.3d at 1074. Quite the contrary, Plaintiffs not only do what *Skidmore* rejects—present random scattered similarities and "make [no] argument based on the overall selection and sequencing of … similarities," *id.* at 1075—they also acknowledge that Vance and Carey select and arrange their different elements in different ways.

As for the lyrics, Plaintiffs' experts admitted that they could not identify any similarity in the organization or order in which the allegedly similar words and phrases appear in Vance and Carey. SUF 224-227. Indeed, Prof. Sakakeeny's color-coded chart confirms that the claimed lyrical similarities are randomly scattered throughout Vance and Carey in phrases with different meanings and in different sections of the songs. Lamm Decl. Ex. 8 at 2 (chart identifying claimed lyrical similarities, *e.g.*, "Take back the holly and mistletoe" in Vance Verse 1 and "I'm just gonna keep on waiting underneath the mistletoe" in Carey Verse 2).

As for the music, Vance's and Carey's hooks have objectively very different patterns of lyrics, melodic notes and rhythms, and chords. *See* above at 12-17; *Corbello*, 974 F.3d at 974 n.2 (play did not copy protectable selection and arrangement of stories in autobiography because, *inter alia*, play depicted the stories differently). Furthermore, the hooks occur in different parts of Vance and Carey and in different overall melodies. SUF 228-234; *Cortes v. Universal Music Latino*, 477

F. Supp. 3d 1290, 1300 (S.D. Fl. 2020) ("Plaintiff's original selection and arrangement of these [lyrics] have not been copied [because] the phrases appear in different parts of the respective choruses."); *Morrill*, 338 F. Supp. 3d at 1059-60 (rejecting selection and arrangement claim where claimed "similar rhythms [were] placed in different parts of the song"). The other claimed musical similarities are randomly scattered throughout different sections of the overall different songs. *See* above at 18-20.

Plaintiffs' reliance on a few commonplace words and phrases, the pitches of four isolated notes, the "function" of three different chords, and other musical building blocks, all of which are selected and arranged differently in Vance and Carey, cannot satisfy the extrinsic test as a matter of law.

**3.    CONCLUSION**

Defendants respectfully submit that their Motion should be granted.

Dated: August 12, 2024

_____

Peter Anderson, Esq.
Lindsay M. Samuel, Esq.
Eric H. Lamm, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants
MARIAH CAREY,
SONY MUSIC ENTERTAINMENT,
and UNIVERSAL MUSIC CORP.

Dated: August 12, 2024

*/s/ Kenneth D. Freundlich*
_____

Kenneth D. Freundlich, Esq.
Jonah A. Grossbardt, Esq.
FRUENDLICH LAW
Attorneys for Defendant
WALTER AFANASIEFF

23

1

2

3    Dated: August 12, 2024                    */s/ Ilene S. Farkas*

4                                              Ilene S. Farkas, Esq.
                                               Benjamin S. Akley, Esq.
5                                              Shamar Toms-Anthony, Esq.
                                               PRYOR CASHMAN LLP
6                                              Attorneys for Defendant
7                                              SONY MUSIC
                                               PUBLISHING (US) LLC
8

9

10   Dated: August 12, 2024                    */s/ Emma M. Tehrani*

11                                             Bert H. Deixler, Esq.
                                               Patrick J. Somers, Esq.
12                                             Emma M. Tehrani, Esq.
13                                             KENDALL BRILL AND KELLY LLP
                                               Attorneys for Defendant
14                                             KOBALT MUSIC PUBLISHING
15                                             AMERICA, INC.

16

17

18

19                      **Attestation Regarding Signatures**

20          The undersigned attests that all signatories listed, and on whose behalf this

21   filing is submitted, concur in this filing's content and have authorized its filing.

22

23

24   Dated: August 12, 2024
25                                             Peter Anderson, Esq.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Mariah Carey, Sony Music Entertainment, and Universal Music Corp. certifies that this Memorandum contains 6,998 words, which complies with the word limit of L.R. 11-6.1.


Dated: August 12, 2024

_____

Peter Anderson, Esq.