Peter Anderson, Esq. (Cal. Bar No. 88891)
peteranderson@dwt.com
Lindsay M. Samuel, Esq. (Cal. Bar No. 320075)
lindsaysamuel@dwt.com
Eric H. Lamm, Esq. (Cal. Bar No. 324153)
ericlamm@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
MARIAH CAREY, SONY MUSIC ENTERTAINMENT, and UNIVERSAL MUSIC CORP.

Kenneth D. Freundlich, Esq. (Cal. Bar No. 119806)
ken@freundlichlaw.com
Jonah A. Grossbardt, Esq. (Cal. Bar No. 283584)
jonah@freundlichlaw.com
FREUNDLICH LAW, APC
16133 Ventura Blvd., Ste. 645
Encino, California 91436
P: 818.377.3790
F: 310.275.5331

Attorneys for Defendant
WALTER AFANASIEFF

[*Additional Counsel on Following Page*]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ANDY STONE, *etc.*, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>MARIAH CAREY, *etc.*, *et al.*,<br><br>Defendants. | Case No. 2:23-cv-09216-MRA-JDEx<br><br>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT<br><br>Date: November 7, 2024<br>Time: 1:30 p.m.<br><br>Courtroom of the Honorable Mónica Ramírez Almadani United States District Judge |

Benjamin S. Akley (Cal. Bar No. 278506)
bakley@pryorcashman.com
Shamar Toms-Anthony (Cal. Bar No. 323246)
stoms-anthony@pryorcashman.com
PRYOR CASHMAN LLP
1801 Century Park East, 24th Floor
Los Angeles, California 90067
Tel: (310) 683-6900
Fax: (310) 943-3397

Ilene S. Farkas (admitted *pro hac vice)*
ifarkas@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square, 40th Floor
New York, New York 10036
Telephone: (212) 421-4100

Attorneys for Defendant
SONY MUSIC PUBLISHING (US) LLC

Bert H. Deixler (Cal. Bar. No. 70614)
bdeixler@kbkfirm.com
Patrick J. Somers (Cal. Bar. No. 318766)
psomers@kbkfirm.com
Emma Tehrani (Cal. Bar. No. 329603)
etehrani@kbkfirm.com
KENDALL BRILL & KELLY LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendant
KOBALT MUSIC PUBLISHING
AMERICA, INC.

# TABLE OF CONTENTS


1. INTRODUCTION ........ 1
    - (a) Summary of Argument ........ 1
    - (b) Summary of Facts ........ 2
2. PLAINTIFFS' FRIVOLOUS MOTION SHOULD BE DENIED ........ 3
    - (a) Plaintiffs Misstate the Applicable Standards ........ 3
        - (1) Plaintiffs Misstate Their Burden at Summary Judgment ........ 3
        - (2) Plaintiffs Rely on an Abrogated Rule for Infringement Claims ........ 3
    - (b) Plaintiffs' Motion Should Be Denied on Procedural Grounds ........ 4
        - (1) Plaintiffs' Motion Violates the Court's Bifurcation Order ........ 4
        - (2) Plaintiff's Motion Should Be Denied Under Rule 56(d) ........ 5
        - (3) Plaintiffs' Muddled Motion Fails to Provide Non-Contradictory Notice of the Relief Sought ........ 7
    - (c) Plaintiffs Have Failed to Proffer Valid Evidence of Copying or Ownership ........ 8
    - (d) Plaintiffs Cannot Satisfy the Extrinsic Test ........ 9
        - (1) Plaintiffs' Motion Confirms Their Experts Failed to Apply the Extrinsic Test ........ 9
        - (2) The Claimed Similarities Are Unprotectable as a Matter of Law ........ 12
            - (i) Vance and Carey Share a Commonplace Lyrical Idea, Not a Lyrical "Structure" or "Sequence" ........ 12
            - (ii) Plaintiffs' Claim that the Lyrics Share the Same "Plot" Is Conclusory ........ 13
            - (iii) The Claimed Similarities in Lyrics Are Unprotectable ........ 13

(iv) The Hooks Have Very Different Music .......................... 15

a. The Hook Melodies Have No Protectable Similarities ........................................................ 15

b. The Hook Chords Are Different and, Even in Combination With the Non-Consecutive Pitches, Are Admittedly Unprotectable ............................... 19

(v) The Overall Melodies and Harmonies Are Completely Different ........................................................................ 20

(vi) The Remaining Claimed Similarities Are Random and Generic ......................................................................... 21

(3) The Claimed Similarities Are Not Protectable as a Selection and Arrangement ......................................................................... 21

3. CONCLUSION ............................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*,
216 F.3d 1042 (Fed. Cir. 2000) ....................11

*Associated Gen. Contractors of Am., etc. v. California Dept. of Transportation*,
713 F.3d 1187 (9th Cir. 2013) ....................8, 12

*Benay v. Warner Bros. Entmt., Inc.*,
607 F.3d 620 (9th Cir. 2010) ....................13

*Berkic v. Crichton*,
761 F.2d 1289 (9th Cir. 1985) ....................13

*Bernal v. Paradigm Talent & Literary Agency*,
788 F. Supp. 2d 1043 (C.D. Cal. 2010) ....................6

*Burch v. Regents of Univ. of Cal.*,
433 F. Supp. 2d 1110 (E.D. Cal. 2006) ....................8

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes etc.*,
323 F.3d 767 (9th Cir. 2003) ....................5, 7

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
213 F.3d 474 (9th Cir. 2000) ....................3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................3

*Corbello v. Valli*,
974 F.3d 965 (9th Cir. 2020) .................... 8, 9, 11, 21

*Davis v. King*,
560 Fed. Appx. 756 (10th Cir. 2014) ....................7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ....................21

*Funky Films, Inc. v. Time Warner Ent. Co.*,
462 F.3d 1072 (9th Cir. 2006) ....................11

*Gilbert-Daniels v. Lions Gate Ent. Corp.*,
No. 2:23-cv-02147-SVW-AGR,
2023 WL 8351563 (C.D. Cal. Sept. 27, 2023) ....................................................4

*Gray v. Hudson*,
28 F.4th 87 (9th Cir. 2022) ....................................................... 9, 17, 18, 19, 20

*Hall v. Swift*,
No. CV-17-6882-MWF(ASx),
2021 WL 6104160 (C.D. Cal. Dec. 9, 2021) ............................................ 21, 22

*Harper House, Inc. v. Thomas Nelson, Inc.*,
889 F.2d 197 (9th Cir. 1989) ..........................................................................9

*Houghton v. South*,
965 F.2d 1532 (9th Cir.1992) .........................................................................3

*Johannsongs-Publ'g Ltd. v. Lovland*,
No. CV 18-10009-AB(SSx),
2020 WL 2315805 (C.D. Cal. Apr. 3, 2020) .................................................9, 10

*Johnson v. Gordon*,
409 F.3d 12 (1st Cir. 2005)...........................................................................17

*Loomis v. Cornish*,
836 F.3d 991 (9th Cir. 2016) ..........................................................................6

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
632 F. Supp. 3d 1108 (S.D. Cal. 2022).............................................................8

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ....................................................................3, 4

*Seltzer v. Green Day, Inc.*,
725 F.3d 1170 (9th Cir. 2013) ......................................................................10

*Silas v. Home Box Office, Inc.*,
201 F. Supp. 3d 1158 (C.D. Cal. 2016) .........................................................13

*Skidmore v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) ............................................ 3, 4, 5, 9, 17, 21, 22

*Smith v. Weeknd*,
No. CV 19-2507 PA,
2020 WL 4932074 (C.D. Cal. July 22, 2020)............................................ 11, 19

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ....................................................9, 22

*Wichita Falls Office Assoc. v. Banc One Corp.*,
978 F.2d 915 (5th Cir. 1992) ....................................................6

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) ....................................................22

**Statutes**

17 U.S.C.
§ 103....................................................6
§ 107....................................................10
§ 205....................................................8

**Rules**

Fed. R. Civ. P.
Rule 7(b) ....................................................7
Rule 56(a)....................................................7
Rule 56(d) ....................................................5, 6
Rule 56(e)....................................................8
Rule 56(f) ....................................................5

**Other Authorities**

M. NIMMER & D. NIMMER, 4 NIMMER ON COPYRIGHT (2024)
§ 13D.02 ....................................................3
§ 13D.07....................................................5

# OPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

### (a) Summary of Argument

Defendants' Motion for Summary Judgment methodically demonstrates that all of the claimed similarities between Plaintiffs' song ("Vance") and Defendants' Song ("Carey") in Plaintiffs' expert reports are unprotectable, individually and in combination. For that reason, Plaintiffs cannot satisfy the extrinsic test as a matter of law.

In contrast, Plaintiffs' Motion for Summary Judgment is a muddled, frivolous, and bad faith attempt to defeat Defendants' Motion by moving on issues not properly before the Court and making conclusory and often irrelevant arguments. The result is more work for the Court and the parties in litigating Defendants' well-placed and dispositive Motion.

To begin with, Plaintiffs directly violate the Court's Order limiting this phase of discovery and dispositive motion practice to the extrinsic test by seeking to establish their ownership of the allegedly infringed copyright and that copying in fact occurred. *See* Mar. 8, 2024, Order Establishing Initial Phase as to the Extrinsic Test ("Order") (Doc. 53). Those fact-intensive issues are completely separate and distinct from the extrinsic test, which is limited to whether Vance and Carey share similarities in protectable expression. Plaintiffs' Motion should also be denied because the Court has stayed all discovery other than expert discovery as to the extrinsic test, and Defendants have had no opportunity to develop the evidentiary record on those issues.[1]

---

[1] While counsel conferred pursuant to Local Rule 7-3 as early as January 2024, regarding bifurcation and early Rule 56 motions, their discussions related to moving for summary judgment as to the extrinsic test. Plaintiffs' counsel never disclosed that their motion would concern other issues. Had they done so, Defendants would have raised the impropriety of making such a motion at that time.

Worse still, Plaintiffs filed their Motion without evidentiary support for their arguments. For example, for factual copying, they rely on Declarations from their retained experts, who not only lack personal knowledge, but also expressly aver that they were "not asked to determine whether [Carey] did or did not copy [Vance]." Fink Decl. (Doc. 69-3) at 3:2-3; Sakakeeny Decl. (Doc. 69-4) at 3:1-2. On other issues, Plaintiffs improperly rely on a conclusory Declaration by their counsel of record and allegations in their unverified Amended Complaint.

Insofar as Plaintiffs' Motion concerns the extrinsic test, it misses the point completely. Plaintiffs offer two expert Declarations with baldly conclusory averments like "there are an enormous number of similarities in the lyrics of the two works" (Sakakeeny Decl. (Doc. 69-4) at 3 ¶ 8), they copy those conclusory statements into a wholly improper statement of uncontroverted facts (P-SUF 53),[2] then they claim to have identified "enough" similarities to satisfy the extrinsic test (Pltfs' Memo. at 11-13). That is not how it works. Rather, the extrinsic test requires the Court to determine whether the claimed similarities are *protectable*, either individually or as a selection and arrangement. Plaintiffs and their experts have not even attempted to provide the Court a basis to make that determination and, indeed, it is undisputed that the claimed similarities are unprotectable.

Plaintiffs' Motion should therefore be denied, and Defendants' Motion granted.

**(b) <u>Summary of Facts</u>**

Defendants respectfully refer the Court to their Memorandum of Points and Authorities for a summary of facts and procedural posture. *See* Doc. 68-1 at 2-3.

---

[2] References to "P-SUF" are to Defendants' Statement of Genuine Disputes filed herewith. References to "D-SUF" are to their Statement of Uncontroverted Facts filed in support of their Motion (Doc. 68-2).

**2. PLAINTIFFS' FRIVOLOUS MOTION SHOULD BE DENIED**

**(a) Plaintiffs Misstate the Applicable Standards**

**(1) Plaintiffs Misstate Their Burden at Summary Judgment**

Plaintiffs' Motion gets the summary judgment standard backwards when it states that Plaintiffs must "demonstrate the absence of facts necessary for one or more essential elements of each claim…." Pltfs' Memo. at 4-5 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Instead, as moving parties with the burden of proving their claim, it is Plaintiffs' initial burden on summary judgment to establish each element of their claim "with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992)). Plaintiffs have failed to satisfy that initial burden.

**(2) Plaintiffs Rely on an Abrogated Rule for Infringement Claims**

"Proof of copyright infringement requires [Plaintiffs] to show (1) that [they] own[] a valid copyright in [Vance]; and (2) that [Defendants] copied protected aspects of the work." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). These elements and their sub-elements (including the extrinsic test) are described in Defendants' Motion. *See* Defs' Memo. at 4-7.

Plaintiffs make two serious errors in discussing the elements of an infringement claim. First, Plaintiffs omit that the second element "contains *two separate components*": "copying" and "unlawful appropriation." *Skidmore*, 952 F.3d at 1064 (emphasis added); *see* Pltfs' Memo. at 5. Copying, or factual copying, asks whether the defendant "copied from plaintiff's work as a purely factual matter—*i.e.*, that defendant knew of the protected work, had access to it, and used it as a model, template, [or] inspiration … to produce its own rival work." M. NIMMER & D. NIMMER, 4 NIMMER ON COPYRIGHT § 13D.02 (2024); *Skidmore*, 952 F.3d at 1065.

Unlawful appropriation, by contrast, asks whether the copying is legally actionable. Skidmore, 952 F.3d at 1064. To demonstrate unlawful appropriation, the plaintiff must establish that "the similarities between the two works [are] 'substantial' and … *involve protected elements of the plaintiff's work*." Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018) (emphasis added), *overruled on other grounds by* Skidmore, 952 F.3d 1051. The extrinsic test—which is the only issue properly before this Court (*see* Order, Doc. 53)—pertains solely to the issue of unlawful appropriation. Skidmore, 952 F.3d at 1064; *see also* Defs' Memo. at 4-6.

Second, Plaintiffs wrongly state that "substantial similarity is inextricably linked to the issue of access." Pltfs' Memo. at 6 (quoting Skidmore, 952 F.3d at 1065-66). Before *Skidmore*, there was a link between access and substantial similarity, but even then, the link related solely to substantial similarity *probative of copying* (also called "probative similarity"), not substantial similarity in protected expression. Rentmeester, 883 F.3d at 1124-25 (the "inverse ratio rule has no bearing" on unlawful appropriation). However, in *Skidmore*, the Court, sitting en banc, "reject[ed] the inverse ratio rule" even for probative similarity, and confirmed that "access … in no way can prove substantial similarity." 952 F.3d at 1069. Access is thus irrelevant to whether Plaintiffs can satisfy the extrinsic test. *Id.*; *see, e.g.*, *Gilbert-Daniels v. Lions Gate Ent. Corp.*, No. 2:23-cv-02147-SVW-AGR, 2023 WL 8351563 at *2 (C.D. Cal. Sept. 27, 2023) (denying motion for additional discovery regarding access because "access" has "no relevance to the extrinsic test").

**(b) Plaintiffs' Motion Should Be Denied on Procedural Grounds**

**(1) Plaintiffs' Motion Violates the Court's Bifurcation Order**

This Court's Order established an initial phase to determine whether Plaintiffs can satisfy the extrinsic test. Doc. 53. To that end, the Order provided for expert discovery as to the extrinsic test, followed by the opportunity to file a "[Rule] 56 motion *as to the extrinsic test*," with all other discovery stayed. *Id.* at 3 ¶¶ 1-2 (emphasis added). While the Court extended the deadlines for the initial phase, it

never expanded the scope of that phase beyond the extrinsic test. *See* Orders, Docs. 58, 61, 65.

Plaintiffs have violated the Court's clear Order by moving for summary judgment on the elements of *ownership* and *factual copying* (including access and, although unclear, potentially striking similarity),[3] which are unrelated to the extrinsic test. Pltfs' Memo. at 5-10; *see above* at 3-4. For that reason alone, Plaintiffs' Motion should not only be denied, but stricken.

**(2) Plaintiff's Motion Should Be Denied Under Rule 56(d)**

Remarkably, Plaintiffs move for summary judgment as to ownership and factual copying even though they know the Court stayed "all … discovery in this action" other than expert discovery as to the extrinsic test. Order at 3 ¶ 2. Not only have they violated the Order, but their conduct leans decidedly into denial of their Motion pursuant to Federal Rule of Civil Procedure 56(d)(1). That Rule provides that "[i]f a nonmovant shows by … declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may, *inter alia*, "deny" the motion. Fed. R. Civ. Proc. 56(d)(1). "Where … a summary judgment motion is filed … before a party has had any realistic opportunity to pursue discovery relating to its theory of

---

[3] Striking similarity is an extraordinarily high legal standard which refers to similarities so probative of copying that they establish factual copying even without evidence of access. *See generally* 4 NIMMER ON COPYRIGHT § 13D.07 ("striking similarity" means "it is virtually impossible that the two works could have been independently created"). It is unclear whether Plaintiffs' Motion argues that striking similarity applies. It cites no law on the issue, instead argues access, and references "striking similarities" only in a conclusory quote from Prof. Sakakeeny's Declaration Pltfs' Memo. at 8; P-SUF 50. Yet, Prof. Sakakeeny's Declaration confirms he was not retained to provide an opinion on factual copying. P-SUF 50 (Defs' Response). In any event, striking similarity is irrelevant to this initial phase because it pertains only to factual copying, and unlike the extrinsic test, can be based on unprotectable similarities. *Skidmore*, 952. F.3d at 1064.

the case, district courts should grant any Rule 56[d] motion fairly freely."[4] *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes etc.*, 323 F.3d 767, 773 (9th Cir. 2003); *see also id.* at 773-774 (relief under Rule 56(d) "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence") (quoting *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992)).

Here, as the Court ordered, the parties conducted no discovery whatsoever as to any issues other than the extrinsic test. Plaintiffs try to avoid that hurdle by arguing "there is no dispute as to Plaintiffs' ownership of the valid copyright to [Vance]." Pltfs' Memo. at 6. But in their Answers, all Defendants denied Plaintiffs' allegations of ownership, including because they lack sufficient knowledge or information as to the truth of those allegations. Docs. 32, 34, 35, 36 ¶¶ 5-6. Further, Plaintiffs apparently copied Vance's music from a 1964 Bobby Vinton song. *See* Defs' Memo. at 2 n.1. If the owners of the Vinton song did not authorize that copying, Plaintiffs' copying would invalidate their claimed copyright in Vance. But even if their copying was authorized, Plaintiffs cannot claim copyright protection over any copied elements. *See* 17 U.S.C. §§ 103(a), (b).

Plaintiffs also rely on their First Amended Complaint's allegations as support for a widespread dissemination theory of access. Pltfs' Memo. at 10; P-SUF 10-11, 68-69. However, Plaintiffs' own pleading shows they impermissibly rely, at least in part, on alleged dissemination *after* Carey was created. *See, e.g.*, FAC at 5 ¶¶ 21-22; *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1054 (C.D. Cal. 2010) ("Defendants must have had access to Plaintiff's copyrighted work *before* the creation of the allegedly infringing work."). In any event, access is a fact-intensive issue. *See Loomis v. Cornish*, 836 F.3d 991, 998 (9th Cir. 2016) (plaintiff failed to

---

[4] *Burlington* discusses former Rule 56(f), which is substantively identical to the current Rule 56(d). *See* Fed. R. Civ. P. 56, Advisory Committee Notes (2010 Amendment).

establish reasonable possibility of access where defendants were present in Santa Barbara but working in recording studio when plaintiff's song "saturated" local music scene).

While the complete stay of all other discovery alone requires denial of Plaintiffs' Motion under Rule 56(d)(1), the accompanying Declaration of Peter Anderson identifies discovery that will be necessary if this case is not disposed of on the basis of Plaintiffs' failure to satisfy the extrinsic test—which it should be. Anderson Decl. at 2-4 ¶¶ 8-13; *see also* *Burlington*, 323 F.3d at 774 (explaining that where "no discovery whatsoever has taken place," parties "cannot be expected" to identify "with great specificity … the kind of discovery likely to turn up useful information").

**(3) Plaintiffs' Muddled Motion Fails to Provide Non-Contradictory Notice of the Relief Sought**

Plaintiffs also fail to meet the basic requirement that motions state "with particularity the grounds for seeking [an] order" and "the relief sought." Fed. R. Civ. P. 7(b)(1). Plaintiffs' Motion states that they seek summary judgment on their "First Cause of Action Direct Copyright Infringement that Defendants copied the original expression of Plaintiffs' copyrighted work," yet their Memorandum concludes by stating that "the case should proceed on its merits." Pltfs' Mot. at i, 13. And their Proposed Order states: "There are [sic] genuine issues of material fact as to Plaintiff's First and Second Causes of Action in the Complaint; thus, the Court finds that Plaintiff is entitled to summary judgment in its favor and against Defendants." Doc. 69-5. However, Plaintiffs' operative Amended Complaint abandons their Second Cause of Action (*see* Doc. 31), and of course, "genuine issues of material fact" would *defeat* their Motion. *See* Fed. R. Civ. P. 56(a).

The Court and Defendants are not required to guess what Plaintiffs are putting at issue in their Motion. *See* *Davis v. King*, 560 Fed. Appx. 756, 761 (10th Cir. 2014)

(affirming denial of motion for leave to file a counterclaim that failed to comply with Rule 7(b)).

**(c) Plaintiffs Have Failed to Proffer Valid Evidence of Copying or Ownership**

Insofar as Plaintiffs' Motion concerns factual copying and ownership, it is also unsupported by evidence. As for Plaintiffs' claim that Vance was widely disseminated, they rely on allegations in their unverified First Amended Complaint. *See* Pltfs' Memo. at 10; P-SUF 10-11. But an unverified complaint "cannot form the basis of evidence considered at summary judgment." *Associated Gen. Contractors of Am., etc. v. California Dept. of Transportation*, 713 F.3d 1187, 1195 (9th Cir. 2013); *see* P-SUF 10-11. Plaintiffs also rely on conclusory statements by their musicologist expert, Prof. Sakakeeny, but he was not designated as an expert on the issue of access, does not have personal knowledge of whether Defendants heard Vance, or Vance's dissemination, and he expressly denies that he is opining on the issue of copying. *See* P-SUF 68-69 (Defs' Responses).

As for ownership, Plaintiffs rely first on a conclusory averment by their *counsel of record* that "[a]t all relevant times, Plaintiffs were the owners of the copyright to [Vance]." *See* P-SUF 15. However, "[S]tatements in declarations [containing] improper legal conclusions, or argumentative statements … will not be considered on a motion for summary judgment." *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1131 (S.D. Cal. 2022) (alteration in original) (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)). Also, Mr. Fox's Declaration fails to explain how he could have personal knowledge of any plaintiff's claimed ownership of Vance's copyright. *See* Fed. R. Civ. P. 56(e). Second, Plaintiffs rely on unauthenticated documents that Mr. Fox does not describe, and are apparently printouts from the Copyright Office website. *See* Fox. Decl. Ex. 6. At most, these documents suggest Plaintiffs registered their copyright in 1988.

That does not establish that they are currently the owners, including because recordation of copyright assignments is not mandatory. *See* 17 U.S.C. § 205.

**(d) Plaintiffs Cannot Satisfy the Extrinsic Test**

The extrinsic test is described in detail in Defendants' Motion. *See* Defs' Memo. at 4-6. In short, Plaintiffs bear the burden of identifying concrete, objective similarities between the works, and the Court then "disregards any that are based on unprotectable material." *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020). If no similarities remain, or only insubstantial similarities remain, Plaintiffs lose at summary judgment. *Id.*; *see* Defs' Memo. at 5-6 (collecting cases). Plaintiffs' Motion fails to make a colorable extrinsic test argument.

**(1) Plaintiffs' Motion Confirms Their Experts Failed to Apply the Extrinsic Test**

As Defendants' Motion explains, Plaintiffs cannot satisfy the extrinsic test because their experts failed to consider prior art and rely on random, fragmentary, claimed similarities that they take out of context and admit are commonplace. Defs' Memo. at 6-7; *Skidmore*, 952 F.3d at 1064 (in applying the extrinsic test, "it is essential to distinguish between protected and unprotected material in a plaintiff's work") (quoting *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)); *Johannsongs-Publ'g Ltd. v. Lovland*, No. CV 18-10009-AB(SSx), 2020 WL 2315805 at *7 (C.D. Cal. Apr. 3, 2020) (granting summary judgment where plaintiff's musicologist failed to consider prior art and filter out unprotected elements), *aff'd* No. 20-55552, 2021 WL 5564626 (9th Cir. Nov. 29, 2021)).

Plaintiffs' Motion does not even argue that any claimed similarity is protectable; to the contrary, it concedes the similarities are commonplace. *See, e.g.*, P-SUF 67 ("many Christmas songs use comparable rhythms and meters"). This despite the fact that "common elements are excluded" in the extrinsic test. *Gray v. Hudson*, 28 F.4th 87, 97 (9th Cir. 2022) (quoting *Skidmore*, 952 F.3d at 1069); *see also Johannsongs*, 2020 WL 2315805 at *6 ("A comparison that includes both

unprotectible and protectible elements is invalid under the extrinsic test and is legally irrelevant."); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 208 (9th Cir. 1989) (jury instruction improperly permitted jury to find substantial similarity based on copying of unprotectable material).

Instead, Plaintiffs argue that their experts identified "enough" similarities to satisfy the extrinsic test. Pltfs' Memo at 13. But the extrinsic test does not ask how *many* claimed similarities there are, it asks whether the claimed similarities are in *protectable* expression. *See, e.g.*, Corbello, 974 F.3d at 974-984 (plaintiff could not satisfy extrinsic test as a matter of law because similarities in more than twelve scenes of biography and musical were unprotectable). Plaintiffs have failed to identify whether any of the claimed similarities are of protectible expression, and as Defendant demonstrated in their Motion, they are not.[5]

Prof. Sakakeeny makes a similar mistake when he claims the lyrics of Carey and Vance have more "consistenc[ies]" than Vance and prior art. P-SUF 55. That vague assertion is baseless because Prof. Sakakeeny, like Prof. Fink, did not research prior art. D-SUF 5-6. But even if Prof. Sakakeeny's claim were true, it has no bearing on whether the claimed similarities in Vance and Carey are *protectable*. Johannsongs, 2020 WL 2315805 at *6 (extrinsic test not satisfied by "tally[ing] up the number of similarities and conclud[ing] that there are more similarities between [plaintiff's and defendant's works] than between [plaintiff's work and prior work]").

Plaintiffs make other irrelevant arguments. Prof. Sakakeeny claims that the songs' lyrics do not have "a different purpose or character" and that Carey "repackages [Vance] without adding any new insights, aesthetic or understanding." P-SUF 56. But that language is cribbed from a different copyright doctrine—fair use—which has nothing to do with the extrinsic test. *See* 17 U.S.C. § 107(1) (fair use factors include the "the purpose and character of the use"); *Seltzer v. Green Day, Inc.*,

---

[5] Plaintiffs' argument does not establish copying of a protectable selection and arrangement, either. *See* below at 21-22.

725 F.3d 1170, 1176 (9th Cir. 2013) (a fair use adds "new information, new aesthetics, new insights and understandings" rather than "merely repackag[ing] … the original"). Because Plaintiffs cannot own fragmentary and commonplace words, pitches, and chords, it is irrelevant whether Carey has a different "purpose or character." In any event, Plaintiffs' experts concede that the claimed similarities are expressed differently in Vance and Carey. *See* P-SUF 56 (Defs' Resp.).

Finally, Plaintiffs argue that their experts are "qualified" and "competent" and their opinions "should be taken as conclusive evidence by this court." Pltfs' Memo. at 1, 6. But Plaintiffs do not prove their claim simply because they found paid experts willing to opine that the songs are similar. *See* Defs' Memo. at 5-6 (collecting cases affirming summary judgment on extrinsic test notwithstanding dueling expert testimony). Indeed, Plaintiffs' expert Declarations consist mostly of conclusory assertions of similarity, which is not evidence of *objective* elements that satisfies the extrinsic test. *See, e.g.*, P-SUF 52 ("Prof. Sakakeeny believes that any differences are negligible."); *Corbello*, 974 F.3d at 974 (extrinsic test is "objective" and examines "articulable similarities") (citation omitted); *Smith v. Weeknd*, No. CV 19-2507 PA (MRWx), 2020 WL 4932074 at *6 (C.D. Cal. July 22, 2020) (opinions of plaintiff's musicologist expert "concerning qualitative and quantitative similarities … [were] thinly veiled opinions about the intrinsic similarities between the works rather than evidence that satisfies the extrinsic test"), *aff'd sub nom. Clover v. Tesfaye*, No. 20-55861, 2021 WL 4705512 (9th Cir. Oct. 8, 2021). That is particularly true here, because the experts' conclusory assertions are contradicted by their own analysis. *See, e.g.*, P-SUF 52 (Defs' Resp.); *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (conclusory expert declarations do not raise a genuine dispute of material fact). Also, they fail to consider prior art and filter out unprotectable elements, which is the foundation of the extrinsic test. *Johannsongs*, 2020 WL 2315805 at *7. Plaintiffs' claim accordingly fails as a matter of law.

**(2) The Claimed Similarities Are Unprotectable as a Matter of Law**

The few concrete similarities that Plaintiffs' Motion identifies are already addressed in Defendants' Motion. Defendants summarize them here to show that there is no genuine dispute that Plaintiffs fail to satisfy the extrinsic test.

**(i) Vance and Carey Share a Commonplace Lyrical Idea, Not a Lyrical "Structure" or "Sequence"**

Both Vance and Carey present the commonplace lyrical idea of wanting the presence of a loved one for Christmas rather than gifts or other trappings of Christmas. D-SUF 15. Copyright does not protect ideas, especially commonplace ones. *See* Defs' Memo. at 8.

Plaintiffs attempt to characterize this unprotectable idea as a "compositional structure" or a "repeated two-part sequence wherein seasonal trappings are rejected in favor of … an unnamed 'you.'" Pltfs' Memo. at 1, 2, 7; P-SUF 7-9. But the only support for these characterizations is their unverified First Amended Complaint, which is not evidence at summary judgment. *See* P-SUF 7-9; *Associated Gen. Contractors*, 713 F.3d at 1195.

Prof. Fink's Declaration and report state that in both Vance and Carey, the singer "makes an elaborate list of … conventional material trappings" then states "*All I Want for Christmas Is You*." P-SUF 26. However, Prof. Fink testified that by "list," he was merely referring to the fact that the singer "identifies conventional material trappings of Christmas, in no particular order." *See id.* (Defs' Resp.). Furthermore, Plaintiffs' experts both confirmed there are no similarities in the order or organization in which the Christmas words occur. D-SUF 224-227. That is obvious from the lyrics themselves. D-SUF 13-14.

Thus, Plaintiffs' claim of a similar "sequence" or "structure" is utterly devoid of evidentiary support.

**(ii) Plaintiffs' Claim that the Lyrics Share the Same "Plot" Is Conclusory**

Prof. Sakakeeny's Declaration states that the lyrics of Vance and Carey have the same "story" and "plot." P-SUF 54. However, at his deposition, Prof. Sakakeeny testified that, while his report says the "storyline" of Vance and Carey is "identical," he would "in retrospect, us[e] 'idea' instead of … storyline," and that he was referring to the unprotectable basic idea identified in the other experts' reports and above; namely, wanting a person rather than Christmas trappings. *Id.* (Defs' Resp.).

Furthermore, plot refers to the "total sequence[s] of events and the relationships between the major characters." *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1173 (C.D. Cal. 2016) (quoting *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985)); *see also* D-SUF 116. Prof. Sakakeeny claims the works have a similar "story" because they feature "a woman who wants her partner…." P-SUF 54. To the extent that is a similarity in "plot," it flows naturally from the underlying idea, and as to be expected, are commonplace in Christmas songs featuring that idea. *Id.* (Defs' Resp.). Thus, it is not a protectable similarity. *See Benay v. Warner Bros. Entmt., Inc.*, 607 F.3d 620, 629 (9th Cir. 2010).

Plaintiffs' experts identify no similar *sequence* in Vance's and Carey's lyrics. D-SUF 117-120. Furthermore, while it is Plaintiffs' burden to establish a claimed similarity in plot, and they fail to do so, Defendants' literary expert, Prof. Lewis, demonstrated that there are objective, articulable differences in the plots of Vance and Carey. *See* Lewis Decl. Ex. 4 (Doc. 68-9) (Lewis Report) at 39 § 7.4.

**(iii) The Claimed Similarities in Lyrics Are Unprotectable**

Defendants have comprehensively shown that each of the words and phrases raised in Plaintiffs' expert reports are used differently and in different parts of Vance and Carey. Defs' Memo. at 8-11; D-SUF 13-101.

Plaintiffs' moving papers mention only a few of those lyrics. First, they refer to the phrase "All I want for Christmas is you," which is unprotectable for many

reasons, including because it was commonplace in Christmas songs predating Vance, is an unprotectable short phrase, and flows naturally from the songs' underlying unprotectable idea. *See* Defs' Memo. at 8-9.

Next, Plaintiffs state that Vance and Carey "include the exact lyrics 'I don't need …' presents 'underneath the Christmas tree.'" Pltfs' Memo. at 11. That is simply false. Vance never uses the word "presents," nor the phrase "I don't need [something] underneath the Christmas tree." Rather, in Vance, the lyric is "All that I want, it can't be found / Underneath the Christmas tree." *See* D-SUF 13, 50, 80. Whereas in Carey, the lyric is "I don't care about the presents / Underneath the Christmas Tree." *See* D-SUF 14, 51, 81. Also, the songs use those lyrics in completely different contexts. *See* D-SUF 13-14, 50-51, 80-81. Thus, the only similarity is the time-worn holiday phrase "underneath the Christmas tree" and the idea of wanting a loved one rather than something underneath a Christmas tree, both of which are commonplace and unprotectable. *See* D-SUF 52-53, 16; Defs' Memo. at 8-10.

Finally, Plaintiffs misrepresent the lyrics again when they claim that, "like [Vance], Carey implores Santa to 'bring me the one thing I really need,' an unnamed 'you,' to make their 'wish come true.'" Pltfs' Memo. at 11-12. Apparently, Plaintiffs are referring to the following bolded lyrics:

| **Vance** | **Carey** |
| --- | --- |
| Verse 1 (lines 1-4) | Intro (lines 5-8)/Chorus (lines 17-20) |
| Take back the holly and mistletoe, | I just want you for my own, |
| Silver bells on strings. | More than you could ever know. |
| **If I wrote a letter to Santa Claus**, | **Make my wish come true:** |
| I would ask for just one thing. | All I want for Christmas is you (yeah). |
| | |
| Verse 3 (lines 13-16) | Bridge (lines 33-41) |
| You are the angel atop my tree, | (Oh) All the lights are shining |

**You are my dream come true**.
**Santa can't bring me what I need,**
'Cause all I want for Christmas is you.

So brightly everywhere,
And the sound of children's
Laughter fills the air,
And everyone is singing.
I hear those sleigh bells ringing.
**Santa won't you bring me**
**The one I really need**
Won't you please bring my baby to me.

D-SUF 13-14, 32-33, 71-72. These lyrics are entirely different, and contrary to Plaintiffs' Motion, Vance does not use the words "wish" or the "one I really need" nor does it implore Santa to do anything. D-SUF 67-68, 34-35. Defendants have already shown that what is similar—common words and tropes like Santa and dreams/wishes coming true—is unprotectable. Defs' Memo. at 9-11.

**(iv) The Hooks Have Very Different Music**

**a. The Hook Melodies Have No Protectable Similarities**

Vance and Carey set the lyrics "all I want for Christmas is you" to objectively different melodies. *See* Defs' Memo. at 12-15. As transcribed by Prof. Sakakeeny,[6] the melody in Vance has nine notes and the melody in Carey has eleven notes. D-SUF 135-136. Plaintiffs' experts collectively identify only four non-consecutive *pitches*—not even four *notes*, because the rhythms (durations and metric placements) are different. D-SUF 127, 137-138, 146.

[6] The technical terms in this brief are defined in Defendants' Motion. Inexplicably, the version of Prof. Sakakeeny's report filed with Plaintiffs' Motion (*see* Fox Decl. (Doc. 69-2) at Ex. 3) is missing a page of text as well as Prof. Sakakeeny's transcriptions of Vance and Carey. *See* Lamm Decl. iso Defs' Mot. Ex. 8 (Doc. 68-13) (Sakakeeny Report); Lamm Decl. iso Opp. to Pltfs' MSJ at 2 ¶ 6.

The pitches and rhythms of the notes in the hooks, as transcribed by Prof. Sakakeeny, are shown in the following table, with the claimed similar pitches in red:

[Table on Next Page]

| Lyric | Vance | | | Carey | | |
|---|---|---|---|---|---|---|
| | Pitch | Duration | Metric Placement | Pitch | Duration | Metric Placement |
| All | 6 | 2/3 of one beat | First 2/3 of Beat 1 | 3 | One whole beat | Beat 1 |
| I | 7 | 1/3 of one beat | Final 1/3 of Beat 1 | 2-1-6 | One whole beat | Beat 2 |
| Want | 1 | 2/3 of one beat | First 2/3 of Beat 2 | 1 | One whole beat | Beat 3 |
| For | 2 | 1/3 of one beat | Final 1/3 of Beat 2 | 6 | One whole beat | Beat 4 |
| Christ- | 3 | 2/3 of one beat | First 2/3 of Beat 3 | b6 | One whole beat | Beat 1 (second measure) |
| -mas | 2<br><br>[rest] | 1/3 of one beat<br><br>1/3 of one beat | Final 1/3 of Beat 3<br><br>First 1/3 of Beat 4 | 2 | Two whole beats | Beats 2 and 3 |
| Is | 2-3[7] | 2/3 of one beat | Second 2/3 of Beat 4 | 3 | One whole beat | Beat 4 (second measure) |
| You | 1 | Two whole beats | Beats 1 and 2 (second measure) | 2-1 | Five whole beats | Beat 1 (third measure) through Beat 1 (fourth measure) |

D-SUF 137-138, 146. These notes are also represented graphically in Defendants'

---

[7] The dashes in this table separate different notes sung to the same lyric. Thus, "2-3" refers to two different notes, one on pitch 2 and one on pitch 3, that have a combined duration of 2/3 of one beat.

Motion. *See* Defs' Memo. at 14; Ferrara Decl. (Doc. 68-3) at 6-7 ¶¶ 17-18.

As can be seen, Prof. Sakakeeny's transcription confirms that the notes with similar pitches have different rhythms, and they are separated by other different notes (x-x-**1**-x-x-**2**-x-**3**-**1** in Vance and x-x-x-x-**1**-x-x-**2**-**3**-x-**1** in Carey). In other words, the hooks do not share the same notes and, instead, share four nonconsecutive *pitches*. Given that copyright does not protect four *consecutive notes* (*Skidmore*, 952 F.3d at 1071), or *any sequence of pitches* without regards to their rhythms (*Gray*, 28 F.4th at 99), it necessarily follows that *four nonconsecutive pitches* are unprotectable. *See* Defs' Memo. at 15.

Plaintiffs' Motion apparently concedes that the claimed melodic similarities are insignificant because it states that "the similarities are mostly noted in the harmonies," and fails to seriously discuss melody. Pltfs' Memo. at 12. Plaintiffs' Motion makes passing reference to the "scale degree 1" on "want"—shown above—as well as a "pronounced rhythmic-melodic similarity at the end (32-31)." P-SUF 33-34. However, "32-31" appears nowhere in any expert report and it is unclear what it means. Assuming Plaintiffs are referring to the notes with pitches 2, 3, and 1 over the lyrics "-mas is you," those are merely the three other nonconsecutive pitches which as discussed above, are unprotectable.

Finally, Plaintiffs state that both hooks move from scale degrees 3 to 6 around the pitch 1 on the lyric "want," but they do so in *reverse direction and order*, which Plaintiffs admit is a "real" "difference." P-SUF 35-36 (Defs' Resp.). They try to explain away that difference by claiming that "creators of 'sound alike' tracks" reverse the direction and order of notes to make their songs different. P-SUF 36. But a difference is a difference and Prof. Fink testified this is not a significant similarity. Indeed, Prof. Fink is only referring to unprotectable pitches, not a protectable melody. P-SUF 35-36 (Defs' Resp.); *see also* *Johnson v. Gordon*, 409 F.3d 12, 21 n.4 (1st Cir. 2005) (plaintiff's musicologist expert could not demonstrate substantial similarity by reversing direction and order of pitches in melody and altering in other ways).

#### b. The Hook Chords Are Different and, Even in Combination With the Non-Consecutive Pitches, Are Admittedly Unprotectable

Plaintiffs and their experts concede that the overall chord progressions in Vance and Carey are different. D-SUF 166-167, 193. But Plaintiffs argue that both have three chords that move from "predominant" to "dominant" to "tonic" in their otherwise different chord progressions. Pltfs' Memo. at 12. This is also addressed in Defendants' Motion. *See* Defs' Memo. at 16-17. Plaintiffs admit the progression of predominant, dominant, tonic is a "very basic" musical element, P-SUF 33, and in any event, even entire chord progressions are unprotectable because they "are basic musical building blocks." *Gray*, 28 F.4th at 100. Moreover, Vance and Carey do not even have the *same* sequences of predominant, dominant, and tonic chords because they use different predominant and different dominant chords. D-SUF 166-167.[8]

Next, Plaintiff argues that this "very basic" progression of (different) predominant, dominant, and tonic chords, combined with the claimed similarity in four non-consecutive pitches discussed above, "makes the two hooks extrinsically more similar." P-SUF 33. But Prof. Fink admits that is not true. He testified that the combination of (a) melodic pitches 1 and 2, 3, 1, and (b) predominant, dominant, and tonic chords is a "framework" and a "musical building block," which he "do[es not] think … can be copyrighted by definition." P-SUF 33 (Defs' Resp.); D-SUF 168-171. He is right. *See* Defs' Memo. at 16-17 and authorities cited therein.

Finally, it is irrelevant that these unprotectable similarities occur in the hooks, which Plaintiffs claim are the "most memorable and significant parts" of Vance and Carey. Pltfs' Memo. at 9. As shown above, however, Vance's and Carey's hooks are different. *See above* at 15-17; Defs' Memo. at 12-17. And nothing in the Copyright

---

[8] Prof. Sakakeeny explains that the terms "predominant," "dominant," and "tonic," refer to the ways that a particular chord can "function." These functions can be performed by different chords. *See* D-SUF 159-160, 166.

Act permits Plaintiffs to monopolize fragmentary public domain elements simply because they appear in what Plaintiffs claim is the most important part of their work. *See, e.g.*, Smith, 2020 WL 493204 at *6 ("[T]he Ninth Circuit has concluded that three consecutive notes are not protectable, no matter how important they might be to a work….").

**(v) The Overall Melodies and Harmonies Are Completely Different**

There are no significant similarities in the melodies and harmonies outside of the hooks either. Defs' Memo. at 17-20. Prof. Fink concedes this is true. D-SUF 180, 193.

Plaintiffs raise that Prof. Sakakeeny identified a similarity in the chord progressions in the verses. P-SUF 61. However, Prof. Sakakeeny's report shows the claimed similarity is only three chords that are commonplace and appear in different places in the overall different chord progressions. *See* Defs' Memo at 19; D-SUF 193-201. Because even entire chord progressions are unprotectable, *see* Gray, 28 F.4th at 100, the claimed similarity in a few chords used differently is unprotectable a fortiori.

Plaintiffs also argue that there is a similarity in "overall harmonic language" because there are other chords that "appear at different locations" in Vance and Carey. P-SUF 62. However, Plaintiffs fail to even identify the chords and there is no support for Plaintiffs' claim that any chords make Vance "unique." Indeed, Prof. Sakakeeny's report does not make this claim—nor could it, because he did not research prior art. *Id.* (Defs' Resp.); D-SUF 6.

Plaintiffs also fail to define the term "overall harmonic language." At his deposition, Prof. Sakakeeny explained that this is "not a technical term," but a "metaphor" he used to "refer to the chords that are used throughout a song." P-SUF 63 (Defs' Resp.). Thus, the claimed similarity is apparently nothing more than that random chords appear somewhere in Vance and Carey. Even Prof. Fink concluded that this is not significant. *Id.*

In any event, isolated chords in overall different chord progressions, or even isolated pitches that are purportedly in Vance's *chords*, but Carey's *melody*, are not protectable similarities. *See* Gray, 28 F.4th at 100 (explaining that because chord progressions cannot be individually protected, constituent components of chord progressions, like the pitches in the chords, cannot be either). The claimed similarity in "harmonic language" is also far too abstract to be protectable. Id. at 99, 100 (musical "texture" and "shape" are unprotectable abstractions).

**(vi) The Remaining Claimed Similarities Are Random and Generic**

Vance and Carey are in different keys, have different overall structures, rhythms, tempos, and stylistic elements, and the claimed similarities are generic. *See* Defs' Memo at 20-21; D-SUF 202-213.

Plaintiffs concede that Vance and Carey are in different musical styles. P-SUF 29, 65. Prof. Fink's Declaration states there are similarities in "several other aspects of larger musical structures" but he fails to identify them and his assertion is flatly contradicted by his deposition testimony. *See* P-SUF 37 (Defs' Resp.). Plaintiffs cannot satisfy the extrinsic test with conclusory assertions of similarity. *See above* at 10-11. Finally, Plaintiffs claim that "several aspects of rhythm and meter" are similar, but they fail to identify these also and admit they are commonplace. P-SUF 67 ("many Christmas songs use comparable rhythms and meters").

Having failed to identify a single protectable similarity, let alone a substantial one, Plaintiffs cannot satisfy the extrinsic test and their claim fails as a matter of law.

**(3) The Claimed Similarities Are Not Protectable as a Selection and Arrangement**

As discussed in more detail in Defendants' Motion, Plaintiffs have no viable selection and arrangement argument because Carey does not feature any *particular* coherent pattern, synthesis, or design that also appears in Vance. Defs' Memo. at 21-23; *Skidmore*, 952 F.3d at 1075 ("[A] selection and arrangement copyright is infringed

only where the works share, in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectable elements.") (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350-351 (1991)).

Plaintiffs' Motion makes no colorable selection and arrangement argument and does not even use the words "selection and arrangement." As mentioned above, their position is apparently that there are a sufficient *number* of similarities to satisfy the extrinsic test in combination. Pltfs' Memo. at 13. But this argument was rejected by the en banc panel in *Skidmore*, who explained that a plaintiff cannot protect "random similarities scattered throughout … the works" simply by "[l]abeling them a 'combination.'" 952 F.3d at 1075. That is because "a selection and arrangement copyright protects … the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design." *Id.* at 1074. Accordingly, to establish that works share a similar selection and arrangement of unprotectable elements, a plaintiff must show a similarity in the "overall selection and sequencing of … similarities," and that allegedly copied selection and arrangement is protectable. *Id.* (alteration in original); *see also* *Corbello*, 974 F.3d at 974 n.2.

Neither Plaintiffs nor their experts even attempt to show that the randomly scattered similarities appear in a *particular*, overall similar pattern or design that appears in both Vance and Carey and that is protectable. *Skidmore*, 952 F.3d at 1074. In fact, their experts admit there is no similarity in any order or organization in the lyrics (D-SUF 224-227), and the claimed musical similarities are isolated and fragmentary in overall different melodies, harmonies, and songs (D-SUF 228-234, 193). Thus, Plaintiffs concede that their claim involves nothing more than unprotectable "*random* similarities scattered throughout the works." *Skidmore*, 952 F.3d at 1075.

None of the authorities cited by Plaintiffs changes the result. In *Hall v. Swift*, the district court denied summary judgment on the grounds that a *four-part sequence* of lyrics involving "players playing" and "haters hating" might be protectable as a

selection and arrangement. *Hall v. Swift*, No. CV-17-6882-MWF(ASx), 2021 WL 6104160 at *1, *4 (C.D. Cal. Dec. 9, 2021). Here, the similarities are random and scattered throughout Vance's and Carey's objectively different overall sequences and organizations of elements. D-SUF 224-234, 193.

Plaintiffs also cite *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004), but *Swirsky* is no longer good law as to the extrinsic test because it relies on the now-abrogated inverse ratio rule to apply a lowered "standard of proof of substantial similarity" due to defendants' "high degree of access." *Id.* at 844 & n.3; *see Skidmore*, 952 F.3d at 1069 (overruling inverse ratio rule). Second, *Swirsky* relies on the proposition that "substantial similarity can be found in a combination of [unprotectable] elements" (*Swirsky*, 376 F.3d at 848), but as discussed above, the en banc panel in *Skidmore* later rejected that a "combination" could establish a selection and arrangement without cohering into an original, "holistic musical design" (*Skidmore*, 952 F.3d 1074-75). Finally, even if *Swirsky* remains good law—which is unlikely—it did not address the issue here and settled by *Skidmore*, namely that a selection and arrangement claim cannot be based on random unprotected elements.

Lastly, Plaintiffs cite *Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018). But that decision affirmed a judgment on a jury verdict where the jury was instructed on the now-abrogated inverse ratio rule. *Id.* at 1123 n.11, 1137. Moreover, *Williams* found the defendants' failure to timely renew a Rule 50(b) motion rendered the jury verdict, and by extension, extrinsic test issues, effectively unreviewable. *Id.* at 1122, 1134-35.

In any event, as Plaintiffs note, *Williams* confirms that the extrinsic test requires them to "demonstrate … that the similarity [is] 'substantial' and to '*protected elements*'…." *Williams*, 895 F.3d at 1120 (emphasis added) (quoting *Swirsky*, 376 F.3d at 849); Pltfs' Memo. at 16. Because Plaintiffs have utterly failed to show that the claimed similarities are protectable, either individually or as a selection and arrangement, their claim fails as a matter of law.

**3. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion should be stricken and, if not stricken, denied, and Defendants' Motion should be granted.

Dated: September 23, 2024

*/s/ Peter Anderson, Esq.*
Peter Anderson, Esq.
Lindsay M. Samuel, Esq.
Eric H. Lamm, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants
MARIAH CAREY,
SONY MUSIC ENTERTAINMENT,
and UNIVERSAL MUSIC CORP.

Dated: September 23, 2024

*/s/ Kenneth D. Freundlich, Esq.*
Kenneth D. Freundlich, Esq.
Jonah A. Grossbardt, Esq.
FREUNDLICH LAW
Attorneys for Defendant
WALTER AFANASIEFF

Dated: September 23, 2024

*/s/ Ilene S. Farkas, Esq.*
Ilene S. Farkas, Esq.
Benjamin S. Akley, Esq.
Shamar Toms-Anthony, Esq.
PRYOR CASHMAN LLP
Attorneys for Defendant
SONY MUSIC
PUBLISHING (US) LLC

Dated: September 23, 2024

*/s/ Patrick J. Somers, Esq.*

Bert H. Deixler, Esq.
Patrick J. Somers, Esq.
Emma M. Tehrani, Esq.
KENDALL BRILL AND KELLY LLP
Attorneys for Defendant
KOBALT MUSIC PUBLISHING AMERICA, INC.

**Attestation Regarding Signatures**

The undersigned attests that all signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized its filing.

Dated: September 23, 2024

*/s/ Peter Anderson, Esq.*

Peter Anderson, Esq.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Mariah Carey, Sony Music Entertainment, and Universal Music Corp. certifies that this Memorandum contains 6,986 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 23, 2024

*/s/ Peter Anderson, Esq.*

Peter Anderson, Esq.